Strafford
No. 86-312

ARMAND AUBERT

v.

JEAN AUBERT

June 5, 1987

*Burns, Bryant, Hinchey, Cox & Shea P.A.*, of Dover (*Paul R. Cox* and *Stephen E. Gaige* on the brief, and *Mr. Gaige* orally), for the plaintiff.

*Fisher, Moran, Willoughby & Clancy*, of Dover (*Karl O. Durand* on the brief, and *Robert E. Fisher* orally), for the defendant.

JOHNSON, J. The defendant appeals a jury verdict rendered on May 14, 1986, in favor of the plaintiff in the amount of $343,000. The following issues are presented for our review: (1) whether a prior action for divorce precludes a subsequent action for personal injuries in tort between the same parties, where the plaintiff in the tort action based his cross-libel for divorce upon the same act involved in the tort suit; (2) whether the Trial Court (*Nadeau*, J.) erred in ruling that the defendant's criminal conviction for the attempted murder of her husband collaterally estops her from litigating the issues of liability and causation in a subsequent tort suit based upon the same wrong; (3) whether the trial court erred in admitting certain medi-

cal records, the defendant's prior criminal conviction, and real evidence in the form of a gun and a sample bullet; and (4) whether the jury verdict in this case was erroneous because it was punitive rather than compensatory in nature. We affirm.

The parties were married on August 7, 1953, and resided together until December 31, 1978. On that date, in the wake of an argument with his wife, the plaintiff left home at approximately 11:00 p.m. to have a New Year's drink at his neighbor's house. Within a few minutes of his arrival there, his wife appeared, wielding the family .38 caliber revolver. The parties struggled, and the plaintiff was shot in the face. He suffered severe and permanent facial injury, as well as scarring. Despite extensive reconstructive surgery, effects of the injury are still present.

The defendant was convicted of the attempted murder of the plaintiff. That conviction was subsequently overturned by this court, in part because the trial court had not properly instructed the jury concerning the defendant's claim that the shooting was accidental. *See State v. Aubert*, 120 N.H. 634, 421 A.2d 124 (1980). The defendant was tried and convicted again in December, 1980.

After her first conviction, Jean Aubert brought an action for divorce based upon irreconcilable differences. Armand Aubert cross-libeled on the ground of extreme cruelty, and testified in detail about the shooting incident. In a decree dated May 1, 1980, Armand was awarded a divorce. Apparently dissatisfied with the terms of his property settlement, Armand brought an appeal to this court, which we declined to accept.

Subsequently, Armand Aubert brought this civil suit for personal injury against his former wife, asserting claims based upon negligence and intentional tortious conduct. Acting on pretrial motions, the trial court ruled that the defendant's prior criminal conviction was *res judicata* on the liability issue. The plaintiff requested liberal compensatory damages at the trial, which was limited to the issue of damages. The jury returned a verdict for $343,000, and this appeal followed.

We first consider whether the trial court erred in failing to dismiss Armand's suit on preclusion grounds because of the previous divorce action between the same parties. Although Jean has couched her argument in "collateral estoppel" terminology, she makes reference to claim preclusion in her brief. We therefore address the preclusion issue under both *res judicata*, or claim preclusion, and collateral estoppel, or issue preclusion.

It is long settled that a prior divorce decree acts as a bar to a subsequent action for *divorce*, as to the same ground and every issue

actually litigated. *See Brown v. Brown*, 37 N.H. 536 (1859) (a final decree in a libel for divorce is a bar to a subsequent libel on the same cause). However, no rule of preclusion is applicable to require that a prior divorce decree acts as a bar to a subsequent civil action in tort. Indeed, the plaintiff has conceded that, in general, such a rule would not make good law, and we decline to adopt such a rule now.

That a spouse can sue another spouse in tort cannot be questioned. *See, e.g., Schneider v. Schneider*, 110 N.H. 70, 260 A.2d 97, 98 (1969) (citing *Morin v. Letourneau*, 102 N.H. 309, 156 A.2d 131 (1959)). Nor can it be argued that a civil action in tort is the same "cause of action" for *res judicata* purposes. Although we have emphasized that "a change in labels is not sufficient to remove the [preclusive] effect of [a] prior adjudication," *Lougee v. Beres*, 113 N.H. 712, 714, 313 A.2d 422, 424 (1973) (quoting *Grace v. Grace*, 394 F.2d 127, 128 (2d Cir. 1968)), we think it clear that a civil action in tort is fundamentally different from a divorce proceeding, and that the respective issues involved are entirely distinct.

In *Eastern Marine v. First Southern Leasing Ltd.*, 129 N.H. 270, 525 A.2d 709 (1987), this court took a step in the direction of clarifying preclusion law in this State by adopting the Restatement (Second) of Judgments definition of cause of action for *res judicata* purposes. In that case we held that "cause of action" collectively "refer[s] to all theories on which relief could be claimed on the basis of the factual transaction in question." *Id.* at 275, 525 A.2d at 712. Thus "a subsequent suit based upon the same cause of action . . . is barred 'even though the plaintiff is prepared in the second action (1) to present evidence or grounds or theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first action.'" *Id.* at 275, 525 A.2d at 712.

For purposes of the present case, we must ask whether the type of relief available in a tort action is available in an action for divorce. We think the clear answer is that the same type of relief is not available in both cases, and that *res judicata* does not operate in this situation, notwithstanding our liberal approach to the question of what constitutes a cause of action. The purpose of a divorce action is to dissolve the marital relationship and effect the legal separation of man and wife, while a tort action is brought to recover compensation for injuries suffered as a result of a civil wrong. It is settled that damages for personal injuries cannot be requested in a divorce proceeding. *Kennard v. Kennard*, 87 N.H. 320, 326-27, 179 A. 414, 419 (1935). The fact that *alimony* is often awarded in such cases does not

alter the point. As this court noted in *Kennard, supra* at 327, 179 A. at 419:

> "[A]limony does not partake of the nature of either damages or a penalty for misconduct. . . . '[It] is an allowance for support and maintenance, having no other purpose and provide[s] for no other object.' . . . Although it is held that the conduct of the [spouse] may be taken into account in fixing the amount of alimony . . . this does not mean that damages for ill treatment are to be assessed against him. . . ."

(Citations omitted.)

██ Having determined that the plaintiff's tort claim is not barred by *res judicata*, we now turn to the question of whether he is precluded from litigating the issue of damages under the doctrine of collateral estoppel, which precludes the relitigation in a subsequent action of issues actually litigated in a prior suit. *Hopps v. Utica Mutual Ins. Co.*, 127 N.H. 508, 511, 506 A.2d 294, 297 (1985). We note that, in New Hampshire, it is not necessary for collateral estoppel that there be mutuality of parties. Thus "[a] party who, after full litigation, has lost on an issue is . . . barred from litigating the issue with new parties." *Cutter v. Town of Durham*, 120 N.H. 110, 111, 411 A.2d 1120, 1121 (1980). Instead, the issue turns on whether or not the party against whom preclusion is sought had a "full and fair opportunity . . . to litigate the issue. . . ." *Sanderson v. Balfour*, 109 N.H. 213, 216, 247 A.2d 185, 187 (1968). It is clear that Armand Aubert had no such opportunity in this case to litigate the damages question in the divorce proceeding. Although Armand testified about his injuries and his wife's conduct in shooting him at the divorce proceeding, such testimony could only have been offered in support of his libel for divorce on grounds of extreme cruelty. The issue of his right to recover damages for his injuries was not before the divorce court, and could not have been. Indeed, the divorce court would be without jurisdiction to award damages for personal injuries.

█ In States such as ours, where husband and wife are liable to each other for their torts, we think the correct view is that the fact of divorce does not affect such liability, and that such liability is not determined in the divorce proceeding. *See* 41 AM. JUR. 2d *Husband and Wife* § 527, at 448 (1968). We hold therefore that the divorce decree did not preclude the bringing of a subsequent action for personal injury in tort.

We next consider whether the trial court erred in its ruling that

Jean Aubert's criminal conviction for the attempted murder of her husband collaterally estops her from litigating the issues of liability and causation in this case. In *Hopps, supra* at 511, 506 A.2d at 297, this court held that a prior criminal conviction has collateral estoppel effect in a subsequent civil proceeding as to the issues actually litigated and decided in the criminal case:

"[T]here is no reason in principle why an earlier criminal judgment should not preclude a party to the criminal prosecution from relitigating an issue of fact in a later civil proceeding, if that party enjoyed a full and fair opportunity to litigate the issue in the first instance. In fact, there is a stronger rationale for applying collateral estoppel against a former criminal defendant than for applying it against a party to a prior civil case, since the criminal defendant has had the benefit of the presumption of innocence and the State's obligation to prove any fact essential to the conviction beyond a reasonable doubt."

This position is in accord with the Restatement (Second) of Judgments § 85(2)(a) (1982), which provides that a judgment in favor of the prosecuting authority in an earlier prosecution is preclusive in favor of a third person in a later civil action against the defendant in the criminal prosecution.

■■ In *Hopps*, we reserved judgment on the significance for preclusion purposes of a defendant's choice not to testify in the criminal action. The defendant's counsel has argued orally on appeal that collateral estoppel should not be applied here because Jean Aubert, presumably invoking her fifth amendment rights, did not testify in the criminal case. However, we hold that this issue, specifically reserved in *Hopps*, is not properly before us in this case, because it was not specifically raised below. Although the issue was raised in the companion case of *Allstate Insurance Company v. Aubert*, 129 N.H. 398, 529 A.2d 915 (1987), this is not tantamount to preserving the issue here. We think the burden on trial courts to avoid error is great enough without asking them to align the issues raised in one case with the facts and parties of another. Further, the defendant has not raised the issue reserved in *Hopps* in her brief. Arguments not briefed are waived on appeal. *Dobbins v. Berwick*, 126 N.H. 477, 479, 493 A.2d 496, 498 (1985). We therefore hold that the general rule of *Hopps* is applicable, and that the defendant is collaterally estopped from relitigating the issues of liability and causation.

Although it is true that causation normally is an issue for the jury to decide, *see Gowen v. Brothers*, 121 N.H. 377, 430 A.2d 159 (1981),

in this case the issue of causation was, we think, necessarily decided in the earlier criminal case. The question of causation in this civil case exists in the context of negligence. Jean Aubert has not argued that Armand Aubert's injury was not caused by the discharge of the gun. Rather, she argues, in effect, that the injury was "caused" by her negligence, and not by her purposeful act. This amounts to relitigating an issue previously determined in the criminal action since Jean claimed in that case that the shooting was accidental. We hold that Jean Aubert is collaterally estopped from raising this argument again in this civil damage action.

■■ We now consider whether the medical records of Dr. Bruce McDougal and Maine Medical Center were properly admitted into evidence. The "business record" exception to the hearsay rule applicable when this case was tried is found in RSA 521:2 (repealed by Laws 1986, 210:1, IV, eff. Jan. 1, 1987), and provides:

> "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

That this provision was enacted to liberalize, and not restrict, the introduction of such records is well established, *Corey Steeplejacks Co. v. Cray*, 106 N.H. 126, 129, 206 A.2d 617, 619 (1965), and it has been extended to hospital records, *Walker v. Walker*, 106 N.H. 282, 289–90, 210 A.2d 468, 473–74 (1965). At the trial, both Dr. Eastman and Dr. McDougal, through video deposition, testified to their knowledge regarding the preparation, compiling, accuracy and keeping of the medical records.

■ We do not agree with Jean Aubert that New Hampshire Rules of Evidence 703 and 705 "imply" that only the party cross-examining the expert witness is entitled to the introduction of medical records which form the basis of the physician's testimony. The records were clearly admissible under the business records statute, which "should not be interpreted narrowly to destroy its obvious usefulness." *Walker, supra* at 290, 210 A.2d at 473 (quoting *Transport Indemnity Co. v. Seib*, 178 Neb. 253, 259, 132 N.W.2d 871, 875 (1965)).

■ Nor can it be said that the records as admitted in this case were unduly prejudicial. Surely any prejudicial effect of the hospital

records, which were relevant as to the damages question, was substantially outweighed by their reliability and probativeness:

"[T]he safeguards of trustworthiness of the records of the modern hospital are at least as substantial as the guarantees of reliability of the records of business establishments. Progress in medical skills has been accompanied by improvements and standardization of the practice of recording facts concerning the patient, and these recorded facts are routinely used to make decisions upon which the health and life of the patient depend."

E. CLEARY, McCORMICK ON EVIDENCE § 313, at 882 (3d ed. 1984). We hold that the medical records in this case were properly admitted.

■ The defendant argues that the admission of the gun and bullet served no purpose other than to inflame the jury, and that they should not have been admitted. We disagree. In order to recover for enhanced compensatory damages, it must be shown that the defendant's act was oppressive, wanton and malicious. *Vratsenes v. N.H. Auto, Inc.*, 112 N.H. 71, 73, 289 A.2d 66, 68 (1972). The trial court, in the exercise of its broad discretion to admit or exclude evidence, could reasonably conclude that the gun was relevant on the issue of the amount of anguish, both physical and mental, endured by Armand, as well as on the question of Jean's wanton conduct, and thus would be probative of the damages in question. *See Welch v. Bergeron*, 115 N.H. 179, 182, 337 A.2d 341, 343 (1975); N.H. R. Ev. 401.

The defendant cites *State v. Perron*, 118 N.H. 245, 385 A.2d 225 (1978) in support of her claim that the probative value of the gun and bullet was far outweighed by its prejudicial effect. *Perron*, however, stands for the proposition that questions regarding the admissibility of documentary evidence rest with the sound discretion of the trial court. In upholding the trial court's admission of photographs depicting injuries to the infant victim, this court in *Perron* affirmed the notion that a decision on the admissibility of such evidence will not be overturned absent an abuse of discretion. *Id.* at 246, 385 A.2d at 225.

■ Applying this principle to the instant case, we cannot say that the admission of the gun and bullet amounted to an abuse of discretion. The evidentiary use of the weapon was expressly and carefully limited to the issue of Jean's malicious, wanton and oppressive conduct. The jury was instructed to consider the weapon for no other purpose. Under these circumstances, the admission of the gun was not reversible error.

▇▇▇ The defendant argues that the "reading and rereading" of the indictment at the trial was "unfair." She cites no authority in support of this contention, however, and we find it to be without merit.

▇▇▇▇▇▇ We now turn to the question of whether the jury award was erroneous as a matter of law, as being excessive and punitive. In New Hampshire, the "punitive" function of exemplary damages has been rejected in forceful and colorful language. *See Fay v. Parker*, 53 N.H. 342, 382 (1872). As this court noted in *Vratsenes v. N.H. Auto, Inc.*, 112 N.H. 71, 73, 289 A.2d 66, 68 (1972), "[n]o damages are to be awarded as a punishment to the defendant or as a warning and example to deter him and others from committing like offenses in the future." Such damages are not allowed. However, it is equally well settled in this State that "when the act involved is wanton, malicious, or oppressive, the compensatory damages awarded may reflect the aggravating circumstances." *Id.* Such damages are termed "liberal compensatory damages," and are available only in exceptional cases. The mere fact that an intentional tort is involved is not sufficient; there must be "ill will, hatred, hostility, or evil motive on the part of the defendant." *Munson v. Raudonis*, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978).

▇▇▇ We think this a proper case for liberal compensatory damages. That Jean Aubert acted oppressively and with ill will cannot be questioned. Indeed, her *mens rea* was necessarily established in the prior criminal proceeding. Further, Armand Aubert's injuries were severe and traumatic. From a distance of less than two feet, the defendant deliberately and with premeditation fired a .38 caliber hollow point bullet into the plaintiff's face. The left side of the plaintiff's cheek, lip and nose area was blown out. Teeth and bone were shattered. Despite extensive reconstructive surgery, some of the damage remains permanent. Under these circumstances, we cannot say that the jury award of damages was excessive as a matter of law.

*Affirmed.*

All concurred.