Grafton
No. 2003-312

THE LYME TIMBER COMPANY & a.

v.

DSF INVESTORS LLC & a.

Argued: January 15, 2004
Opinion Issued: February 17, 2004

*Daschbach, Cooper, Hotchkiss & Csatari, P.A.*, of Lebanon (*Joseph F. Daschbach* on the brief and orally), for the plaintiffs.

*Upton & Hatfield, LLP*, of Concord (*Russell F. Hilliard* and *Lauren S. Irwin* on the brief), and *Todd & Weld LLP*, of Boston, Massachusetts (*Howard M. Cooper* on the brief and orally), for the defendants.

NADEAU, J. The defendants, DSF Investors LLC and Arthur Solomon (collectively, DSF), appeal an order of the Superior Court (*Burling*, J.) denying their motion to dismiss an action filed by the plaintiffs, The Lyme Timber Company and Lyme NC LLC (collectively, Lyme), for lack of personal jurisdiction. We affirm and remand.

This action arises out of the negotiation of a proposed real estate development deal between DSF and Lyme. DSF Investors LLC is a real estate investment company based in Massachusetts. Its founder is Arthur Solomon. The Lyme Timber Company, LLC is a New Hampshire limited partnership with its principal place of business in Lyme, New Hampshire. Lyme NC LLC is a Delaware company that was formed to participate in the proposed deal between DSF and Lyme.

The proposed deal involved redevelopment of the New England Confectionary Company (Necco) factory building in Cambridge, Massachusetts. The parties began negotiating in the summer of 2001. Although they now disagree as to its enforceability, they entered into a preliminary agreement entitled, "Term Sheet." The Term Sheet contained a provision which stated that neither party would incur any obligation to

the other until definitive, binding legal documents were executed and delivered. Before a final agreement was reached, DSF terminated negotiations with Lyme.

DSF filed a declaratory judgment action in Massachusetts seeking a ruling that the Term Sheet precluded binding legal obligations and claims. DSF's suit was not served on Lyme immediately. Unaware of the pending action, Lyme filed suit against DSF in New Hampshire several weeks later, asserting claims that included misrepresentation and entitlement to a partnership accounting, among others. DSF moved to dismiss the New Hampshire action based upon lack of personal jurisdiction.

After a hearing, the superior court denied DSF's motion, finding that Lyme had met its burden of establishing personal jurisdiction based upon a *prima facie* evidence standard. This appeal followed.

The plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction. *Staffing Network v. Pietropaolo*, 145 N.H. 456, 457 (2000). The plaintiff need make only a *prima facie* showing of jurisdictional facts to defeat a defendant's motion to dismiss. *Metcalf v. Lawson*, 148 N.H. 35, 37 (2002). Where a *prima facie* evidence standard is employed, we review a trial court's ruling on a motion to dismiss for lack of personal jurisdiction *de novo*. *See, e.g., Jet Wine & Spirits, Inc. v. Bacardi & Co. Ltd.*, 298 F.3d 1, 6-7 (1st Cir. 2002).

■ ■ Determining whether a defendant is subject to personal jurisdiction involves a two-part inquiry. *Metcalf*, 148 N.H. at 37. "First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the Federal Due Process clause must be satisfied." *Id.* (brackets omitted). Because we construe the State's long-arm statute as permitting the exercise of jurisdiction to the extent permissible under the Federal Due Process clause, our primary analysis relates to due process. *Id.; see also Dagesse v. Plant Hotel, N.V.*, 113 F. Supp. 2d 211, 215 (D. N.H. 2000).

■ "[A] court may exercise personal jurisdiction over a non-resident defendant if the defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotation omitted). "Jurisdiction can be 'general,' where the defendant's contacts with the forum State are 'continuous and systematic,' or 'specific,' where the cause of action arises out of or relates to the defendant's forum-based contacts." *Staffing Network*, 145 N.H. at 458 (quotation omitted). In this case, Lyme asserts that specific jurisdiction applies. Where specific contacts with the forum are the basis for personal jurisdiction, whether those contacts are

constitutionally sufficient requires an analysis of the relationship between the defendant, the forum and the litigation. *Alacron v. Swanson*, 145 N.H. 625, 628 (2000). The inquiry focuses not only upon whether the defendant's contacts might have caused injury in New Hampshire, but whether the contacts should have given the defendant notice that he or she should reasonably have anticipated being haled into court here. *Id.*

> In determining if the exercise of specific personal jurisdiction comports with due process, we examine whether: (1) the contacts relate to the cause of action; (2) the defendant has purposefully availed [him or] herself of the protections of New Hampshire law; and (3) it would be fair and reasonable to require the defendant to defend the suit in New Hampshire.

*Metcalf*, 148 N.H. at 37. Each factor must be evaluated on a case by case basis, and all three factors must be satisfied in order for the exercise of jurisdiction to be constitutional. *Id.* at 37-38.

Lyme asserts that the first due process element is met because its claims arise out of DSF's forum-based contacts. Lyme alleges in its complaint and affidavits that DSF directed many telephone calls, letters, faxes and e-mails regarding the proposed deal to Lyme in New Hampshire, and that the communications encompassed those that form the basis of Lyme's claims, including statements that the parties were very close to a final contract, that a partnership had come into being and that the written agreements were a mere formality.

The second prong is whether DSF purposefully availed itself of the privileges and protections of New Hampshire law. Lyme asserts that DSF's physical presence in New Hampshire was unnecessary so long as its contacts were "sufficient to have reasonably foreseeable consequences within the forum State." *See Staffing Network*, 145 N.H. at 459. Lyme argues it was foreseeable that if DSF directed misrepresentations to Lyme in New Hampshire during the course of negotiations, it could be held accountable here. *See VDI Technologies v. Price*, 781 F. Supp. 85, 89 (D. N.H. 1991). Lyme has further alleged that the harm arising from DSF's tortious conduct was felt in New Hampshire where, as DSF knew or should have known, Lyme is principally based. *Id.* at 90.

In connection with the third due process inquiry, Lyme argues that it is fair and reasonable to require DSF to defend this suit in New Hampshire. Lyme correctly notes that this last inquiry requires the court to consider factors, including:

the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Staffing Network*, 145 N.H. at 459.

Lyme argues that DSF would not be burdened by the amount of travel involved, and that New Hampshire has a significant interest in affording New Hampshire plaintiffs a convenient forum in which to seek redress for their injuries. *Phelps v. Kingston*, 130 N.H. 166, 175 (1987). Lyme further notes that it has been based in New Hampshire for twenty-five years, its principal witnesses are located here and that a significant amount of information related to the case is located in New Hampshire. Finally, regarding DSF's pending action in Massachusetts, Lyme argues that the States' shared interest in furthering substantive social policies would be undermined by permitting DSF to engage in what Lyme believes is forum shopping.

With respect to the first part of the due process inquiry, DSF concedes on appeal that the claims at issue arise out of its contacts with New Hampshire. DSF argues, however, that the second due process inquiry is not satisfied because it did not purposefully avail itself of the benefits and protections of New Hampshire law. DSF asserts that its proposed contract with Lyme is insufficient in and of itself to establish minimum contacts, and that the alleged contacts were fortuitous and do not satisfy due process. DSF further argues that it was not foreseeable that its limited dealings with Lyme would result in an impact in New Hampshire.

■ "The cornerstones upon which the concept of purposeful availment rest[s] are voluntariness and foreseeability." *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995). Lyme's complaint and affidavits establish that DSF embarked upon a course of negotiations with a counterpart based in New Hampshire. DSF's contacts were voluntary and continued over an extended period of time. In fact, this was the second business dealing between the parties, the first having occurred when DSF contracted with Lyme to purchase a piece of property it needed in order to acquire the Necco building. We find that the nature and extent of DSF's contacts with Lyme in New Hampshire, in furtherance of the proposed development deal, were constitutionally significant.

■ In the same vein, we find that it was foreseeable that any harm to Lyme in connection with the proposed deal would occur in New Hampshire. "It is settled New Hampshire law that a party commits, for jurisdictional purposes, a tortious act within the state when injury occurs in New Hampshire even if the injury is the result of acts outside the state." *VDI Technologies*, 781 F. Supp. at 89 (quotation omitted). The impact of those actions, however, must be more than fortuitous. *Id.* at 90. Given that Lyme is based in New Hampshire and that DSF's communications were directed to Lyme here, the alleged impact cannot be said to be fortuitous. Accordingly, we find that DSF purposefully availed itself of the privileges and protections of New Hampshire law.

In an alternative argument made with respect to minimum contacts and purposeful availment, DSF contends that the Term Sheet prevented Lyme from having or asserting any misrepresentation claims. Noting that reasonable reliance is an element of a misrepresentation claim under both New Hampshire and Massachusetts law, DSF asserts that no good faith reliance can be established or pled in light of the non-binding nature of the parties' respective commitments. *See Snierson v. Scruton*, 145 N.H. 73, 78 (2000); *Barrett Assocs. v. Aronson*, 190 N.E.2d 867, 868 (Mass. 1963). We find that construction of the Term Sheet goes to the merits of the case and is not relevant to the issue of personal jurisdiction under review. The same is true with respect to the issue of waiver of the provisions of the Term Sheet briefed by the parties.

Nor is DSF's argument regarding choice of law persuasive. On appeal, DSF has conceded that the superior court employed the correct methodology in conducting its due process analysis. It appears that DSF's argument regarding choice of law is directed solely to issues of interpretation of the Term Sheet and other applicable contract documents. Given our ruling that interpretation of the Term Sheet goes to the merits of the parties' dispute, we need not reach the choice of law issue.

The final due process inquiry is whether it is fair and reasonable to subject DSF to suit in New Hampshire. *See Staffing Network*, 145 N.H. at 459. DSF admits that the distance it must travel to defend the suit in New Hampshire is not burdensome by itself. However, given the pending Massachusetts litigation, it argues that the New Hampshire suit constitutes duplicative litigation. DSF further argues that Massachusetts has a significant interest in regulating business transactions conducted in accordance with Massachusetts law. The States' shared interest in judicial efficiency and economy is also said to favor dismissal of the New Hampshire action in that allowing the cases to proceed on parallel tracks

will consume more resources and present a threat of inconsistent judgments.

■ We find that it is fair and reasonable to require DSF to defend this suit in New Hampshire. DSF was in the best position to avoid duplication of suits by giving Lyme timely notice of the filing of the Massachusetts action. It appears to be uncontested that Lyme filed its New Hampshire action without knowledge of the other suit. Moreover, the Term Sheet did not contain a choice of law provision. The final agreement under negotiation called for the application of Delaware law in the event of a dispute. Thus, it is far from clear on the record that the parties intended Massachusetts law to apply. Under the circumstances, we do not find that Massachusetts has a greater interest than New Hampshire in regulating the conduct that is the subject of the parties' dispute. Finally, the shared interest of the States in furthering fundamental substantive social policies favors a finding of personal jurisdiction in this case.

Accordingly, we hold that the United States Constitution and the laws of this State permit the superior court to exercise personal jurisdiction over the defendant.

*Affirmed and remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.