Plymouth Family Division
No. 2003-704

## HEIDI MCNAIR

v.

## RYAN MCNAIR

Argued: May 13, 2004
Opinion Issued: August 30, 2004

344

*Bronwyn Asplund-Walsh*, of Franklin, by brief and orally, for the plaintiff.

*Gabriel Nizetic*, of Plymouth, by brief and orally, for the defendant.

NADEAU, J. The defendant, Ryan McNair, appeals orders of the Plymouth Family Division (*Carbon*, J.) relating to a domestic violence petition filed against him by the plaintiff, Heidi McNair. We affirm.

On April 10, 2003, the plaintiff filed a domestic violence petition with the Plymouth Family Division stating that she and the defendant were separated and listing an address in Texas for the defendant. She alleged a "violent past" between herself and the defendant, including hitting, screaming, throwing things at her and sexual assault, and claimed that the same abuse had happened to her children. She stated that she "believe[d] in all [her] heart that he would show up in this state to kill me [and] take the children."

The defendant filed a motion to dismiss, arguing that the court lacked personal jurisdiction over him. The court denied the motion, stating:

> [I]t is both fair and reasonable for New Hampshire to exercise jurisdiction because the Plaintiff and the minor children reside in this State, because the abuse has occurred within this jurisdiction and because the only other court exercising jurisdiction [*i.e.*, the Texas court that had issued temporary divorce orders] issued orders specifically stating that the New Hampshire DSS [DCYF] may issue restrictions governing the Defendant's behavior.

Judge Carbon also noted that she had communicated with the Texas court pursuant to the Uniform Child Custody Jurisdiction Act, and that "the Texas court ha[d] concurred that New Hampshire may exercise emergency jurisdiction."

Prior to the final hearing on the domestic violence petition, the Texas court issued a final divorce decree. The defendant was granted the "exclusive right to determine the children's primary physical residence." In addition, the Texas court ruled that "having heard allegations of domestic violence in the form of sexual abuse, [it] finds that there is no credible evidence supporting the allegations that any domestic violence occurred between the parties or the children that are the subject of this suit."

The defendant filed a second motion to dismiss in the New Hampshire domestic violence proceeding. First, noting that the plaintiff's domestic

violence petition requested temporary custody of the children, the defendant argued that the Plymouth Family Division "d[id] not have the authority to grant the [plaintiff] custody ... in contravention of Texas' custodial order and decree." The defendant further argued that the plaintiff was precluded by the doctrines of res judicata and collateral estoppel from relitigating in New Hampshire any claims of domestic or sexual abuse.

The court denied the defendant's second motion to dismiss and entered a final domestic violence order. The court concluded that the Texas divorce decree did not preclude the issuance of appropriate orders in New Hampshire. The court noted that the Texas divorce decree was issued by default due to the plaintiff's failure to appear and answer. The plaintiff averred, however, that she had not been informed of the date of the final hearing in Texas despite having contacted the clerk's office many times to request such notice. The court stated:

> This Court has confirmed with the Clerk's office of the Uvalde County 38th Judicial District Court that Ms. McNair did indeed call on numerous occasions advising the Court that she had not yet secured an attorney, and further requesting to be advised when a final hearing would be scheduled. The Texas Court Clerk's office also confirmed that they did *not* advise Ms. McNair of any final hearing date, despite her many requests.

The court therefore concluded that the plaintiff "was never given an opportunity to be heard."

In addition, the court held:

> Where Texas was aware that emergency proceedings were pending in New Hampshire, and where Texas was aware of concerns about the safety of the children as articulated in their own temporary orders from 2001, and based upon the telephone conversation between the justices of the two courts, this Court finds that it is appropriate to exercise authority over these proceedings, notwithstanding a Default Decree of Divorce issued in Texas.

After issuance of the final order, the defendant filed a motion to recuse Judge Carbon based, in part, upon her communication with the clerk of the Texas court. The defendant requested that all outstanding orders by Judge Carbon be vacated and that the case proceed before another judge.

The court ruled on the motion to recuse by noting that although she "d[id] not believe that any communication with the Texas court was inappropriate," she "would not want for any party to believe that he or she

did not have a full and fair opportunity to be heard by a fair, impartial and objective jurist." Accordingly, the court stated that it would decline to preside over further hearings in this matter and would assign another judge should further hearings be required.

In addition, in light of new information elicited in related child protection proceedings, the court vacated the portion of the final domestic violence order regarding custody of the children and held that "New Hampshire must accord the default judgment full faith and credit as to the custody orders." It ordered that the protective provisions regarding the plaintiff, however, remain in effect, stating that "[i]ssuance of custody orders in one jurisdiction does not ... preclude issuance of protective orders for an adult victim of domestic violence in another jurisdiction."

On appeal, the defendant argues that: (1) the Family Division lacked personal jurisdiction over him because he is "a non-resident who was not alleged to have committed any act within New Hampshire"; (2) the Family Division lacked subject matter jurisdiction because no conduct occurring in New Hampshire was alleged and assumption of jurisdiction would contravene a custodial order entered by a Texas court; (3) the Family Division was prohibited by res judicata and collateral estoppel from hearing issues previously decided by a Texas court; (4) the Family Division lacked authority to invalidate or contravene a final divorce decree issued by a Texas court; (5) the Family Division judge took part in an improper *ex parte* investigation of facts when she spoke to staff of a Texas court; and (6) the Family Division erred in holding itself not bound by *Fichtner v. Pittsley*, 146 N.H. 512 (2001).

We first address the issue of personal jurisdiction over the defendant. "Determining whether a defendant is subject to personal jurisdiction involves a two-part inquiry. First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the Federal Due Process clause must be satisfied." *Lyme Timber Co. v. DSF Investors*, 150 N.H. 557, 559 (2004) (citation omitted).

The defendant argues that "[t]here is no long arm statute applicable in this case and RSA 173-B provides no extended jurisdiction." The plaintiff contends that personal jurisdiction was conferred by New Hampshire's general long-arm statute, RSA 510:4, I (1997). RSA 510:4, I, provides:

> Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of this state as to

any cause of action arising from or growing out of the acts enumerated above.

We have held that this statute "must be construed in its broadest legal sense to give effect to the legislative intent," *Tavoularis v. Womer*, 123 N.H. 423, 426 (1983), which was "to provide resident plaintiffs a convenient forum in which to sue for injuries attributable to foreign defendants," *Phelps v. Kingston*, 130 N.H. 166, 171 (1987).

The defendant argues that RSA 510:4, I, is inapplicable because: (1) RSA 510:4, I, extends jurisdiction to persons who commit torts within, not outside, New Hampshire; (2) RSA 510:4, I, was enacted before RSA chapter 173-B, negating any inference that RSA 510:4, I, was intended to provide plaintiffs a convenient forum with respect to domestic violence actions; (3) this case sounds in equity, not tort; and (4) even if the defendant did commit a tort against the parties' daughter in New Hampshire, the daughter is not the plaintiff in the instant action.

■ We reject the defendant's first argument because we have held that where the only occurrence in New Hampshire is the injury resulting from an out-of-state tort, New Hampshire courts are not precluded from subjecting a nonresident to their jurisdiction under the long arm statute. *Tavoularis*, 123 N.H. at 426. The plaintiff alleged that the defendant directed threatening telephone calls to her in New Hampshire; thus, any injury related to those calls presumably occurred in this State.

■ As the defendant's second and third arguments are related, we will address them together. In *Hutchings v. Lee*, 119 N.H. 85, 88 (1979), we noted that RSA 510:4 "by its terms confers in personam jurisdiction for 'any cause of action' arising out of the defendant's tortious acts within the State." We therefore saw no reason to hold jurisdiction lacking "merely because the plaintiff seeks relief at equity rather than law." *Hutchings*, 119 N.H. at 88. Thus, the defendant's third argument, namely, that RSA 510:4, I, is inapplicable because this proceeding is an equity action rather than a tort case, is unavailing so long as the defendant's conduct constitutes a "tortious act" under RSA 510:4, I.

■ Similarly, the defendant's second argument—that because RSA 510:4, I, was enacted before RSA chapter 173-B, "the legislature's purpose in enacting RSA 510:4 could not possibly have been to provide plaintiffs a convenient forum to deal with foreign defendants in domestic violence matters"—also fails if the acts of domestic violence alleged constitute tortious acts for purposes of RSA 510:4, I. The plain language of RSA 510:4, I, evinces the legislature's intent to provide for personal jurisdiction over any defendant who "commits a tortious act within this state." RSA

510:4, I. The legislature need not reenact RSA 510:4, I, each time a new tort is recognized in this State; the statute simply applies by its terms to the newly recognized tortious act.

Furthermore, under the reasoning of *Hutchings v. Lee*, RSA 510:4, I, will automatically apply to a newly-created equitable cause of action arising out of a tortious act committed within this State. Thus, if the defendant's alleged acts are tortious for purposes of RSA 510:4, I, his second and third arguments must fail.

█ Although the plaintiff does not specify an equivalent tort for the defendant's alleged acts, the allegations appear to assert the tort of intentional infliction of emotional distress. *See Morancy v. Morancy*, 134 N.H. 493 (1991). We conclude that the defendant's alleged conduct qualifies as tortious for purposes of RSA 510:4, I. *Tavoularis*, 123 N.H. at 426. Moreover, because the petition alleged that such conduct was directed toward the plaintiff as well as the children, we reject the defendant's fourth argument.

█ Having determined that the defendant's alleged conduct is within the scope of RSA 510:4, I, we must now examine whether the exercise of personal jurisdiction over him is consistent with the requirements of due process. *See Tavoularis*, 123 N.H. at 426. "The federal Due Process Clause permits the exercise of personal jurisdiction over a defendant if the defendant has certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Staffing Network v. Pietropaolo*, 145 N.H. 456, 458 (2000) (quotation omitted). "Jurisdiction can be 'general,' where the defendant's contacts with the forum State are 'continuous and systematic,' or 'specific,' where the cause of action arises out of or relates to the defendant's forum-based contacts." *Lyme Timber*, 150 N.H. at 559. The plaintiff asserts that the same actions that gave rise to the domestic violence petition—namely, the defendant's threatening telephone calls—constitute his minimum contacts with New Hampshire; thus, we need only determine whether specific personal jurisdiction exists. *Cf. Staffing Network*, 145 N.H. at 458.

█ Where personal jurisdiction is based upon contacts with the forum State, "whether those contacts are constitutionally sufficient requires an analysis of the relationship between the defendant, the forum and the litigation." *Lyme Timber*, 150 N.H. at 559-60. Specifically, "we examine whether: (1) the contacts relate to the cause of action; (2) the defendant has purposefully availed him or herself of the protections of New Hampshire law; and (3) it would be fair and reasonable to require the

defendant to defend the suit in New Hampshire." *Id.* at 560 (quotation and brackets omitted).

As noted above, the alleged minimum contacts, *i.e.*, the defendant's threatening telephone calls, are the same acts upon which the domestic violence petition was based; thus, the contacts relate to the cause of action. The defendant, however, challenges whether the trial court's finding that he "placed multiple harassing phone calls to [the plaintiff] from Texas while she resides in New Hampshire," is supported by the pleadings and record. He asserts that the plaintiff did not "testify under oath to any of the foregoing."

■ As to this issue, however, the hearing proceeded on offers of proof. The court asked for "an offer of something that occurred in New Hampshire." The plaintiff's attorney answered that she had "a witness here who can testify for you today that he intercepted a telephone call from the defendant, spoke[] with him, and the defendant told him that if my client—if he could not have my client, no one was going to have her." The court later asked for "any other offers of other conduct that occurred in New Hampshire," to which the plaintiff's attorney replied: "Well, numbers and numbers of telephone calls. Forty calls a day to my client." Accordingly, we conclude that there is evidence in the record of "multiple harassing phone calls" made by the defendant in Texas to the plaintiff in New Hampshire.

We next inquire whether the defendant has purposefully availed himself of the protections of New Hampshire law. *See Lyme Timber*, 150 N.H. at 560. "The cornerstones upon which the concept of purposeful availment rests are voluntariness and foreseeability." *Id.* at 561 (quotation and brackets omitted). The plaintiff asserts that "the defendant has purposefully directed his actions at New Hampshire; specifically, he directed his threatening phone calls ... against a New Hampshire resident."

The plaintiff argues that this case is like *Lyme Timber*, in which it was alleged that the out-of-state defendants directed to the plaintiff in New Hampshire "many telephone calls, letters, faxes and e-mails regarding the proposed deal" out of which the cause of action arose. *Id.* at 560. We found that the nature and extent of the defendants' contacts in *Lyme Timber* were constitutionally significant where they were "voluntary and continued over an extended period of time." *Id.* at 561. We also stated that "it was foreseeable that any harm to Lyme in connection with the proposed deal would occur in New Hampshire." *Id.* at 562. We concluded: "Given that Lyme is based in New Hampshire and that DSF's communications were directed to Lyme here, the alleged impact cannot be said to be

fortuitous. Accordingly, we find that DSF purposefully availed itself of the privileges and protections of New Hampshire law." *Id.*

■ Similarly, the defendant's harassing phone calls were voluntary and numerous: allegedly, forty calls a day. In addition, because the plaintiff is a New Hampshire resident and the defendant's telephone calls were directed to her here, any injury occurring in this State "cannot be said to be fortuitous." *Lyme Timber*, 150 N.H. at 562. Thus, we conclude that the defendant purposefully availed himself of the privileges and protections of New Hampshire law.

The next inquiry is whether "it would be fair and reasonable to require the defendant to defend the suit in New Hampshire." *Id.* at 560 (quotation omitted). In conducting this inquiry, we may consider the following factors:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Staffing Network*, 145 N.H. at 459 (quotation omitted).

At the hearing on the first motion to dismiss, the defendant's attorney noted the "significant expense" to the defendant involved in traveling to New Hampshire. Accordingly, we acknowledge the burden on the defendant of having to defend this action in this State.

We have noted, however, that "New Hampshire has a strong interest in providing a forum for its residents to redress injuries they suffer here," *Estabrook v. Wetmore*, 129 N.H. 520, 525 (1987), which includes injuries suffered as a result of domestic violence. We conclude that New Hampshire also has an equally strong interest in providing protection to victims of domestic violence within this State. Indeed, "RSA chapter 173-B was enacted with the intent 'to preserve and protect the safety of the family unit for all family or household members by entitling victims of domestic violence to immediate and effective police protection and judicial relief.'" *State v. Kidder*, 150 N.H. 600, 604 (2004) (quoting N.H.H.R. JOUR. 648-49 (1999)).

■ We conclude that the defendant's burden in defending this case in New Hampshire is outweighed by the plaintiff's interest in obtaining, and the State's interest in providing, relief and protection in New Hampshire. *Cf. Alacron v. Swanson*, 145 N.H. 625, 630 (2000). Accordingly, we affirm

the trial court's determination that its exercise of jurisdiction over the plaintiff was both fair and reasonable.

The defendant next argues that the trial court lacked subject matter jurisdiction under RSA chapter 173-B. Although the argument caption in his brief asserts that the court lacked subject matter jurisdiction when no abuse was alleged to have occurred in New Hampshire, the defendant does not substantively address that argument in his brief, and we therefore deem it waived. *See In the Matter of Jasper-O'Neil & O'Neil*, 149 N.H. 87, 91 (2003). Instead, the defendant's substantive argument focuses upon the Texas court's prior assumption of jurisdiction over the parties' divorce action. The defendant asserts that "[a]n order issued pursuant to RSA 173-B cannot supercede [*sic*] a legal custodial order from a foreign court of competent jurisdiction." The trial court, however, has already vacated that portion of the final domestic violence order regarding custody of the children and held that "New Hampshire must accord the default judgment full faith and credit as to the custody orders." Thus, the defendant's argument regarding subject matter jurisdiction is moot.

For the same reason, we need not address the defendant's argument that the trial court erred in holding itself not bound by *Fichtner v. Pittsley*. *Fichtner* struck down a custody award, ordered in a domestic violence proceeding, that contravened a custody award previously made in a divorce proceeding. *Fichtner*, 146 N.H. at 515. Because the trial court has vacated that portion of the final domestic violence order regarding custody, the defendant's *Fichtner* argument is also moot.

The defendant next argues that the trial court was precluded by res judicata and collateral estoppel from hearing issues previously decided by the Texas court. To the extent that the defendant's argument deals with the Texas court's custody ruling, we find that argument moot for the reasons previously stated. The argument also relates, however, to the Texas court's findings regarding domestic violence. Specifically, the Texas court ruled that "having heard allegations of domestic violence in the form of sexual abuse, [it] finds that there is no credible evidence supporting the allegations that any domestic violence occurred between the parties or the children that are the subject of this suit."

> In its most basic formulation, the doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such a party from relitigating any issue or fact actually litigated and determined in the prior action. Res judicata, or "claim preclusion," is a broader remedy and bars the relitigation of any

issue that was, or might have been, raised in respect to the subject matter of the prior litigation.

*Grossman v. Murray*, 141 N.H. 265, 269 (1996) (emphasis omitted).

■ The plaintiff argues that collateral estoppel does not apply because the Texas divorce decree was a default judgment. We agree. "In the case of a judgment entered by default, none of the issues is actually litigated." *Marston v. U.S. Fidelity & Guaranty Co.*, 135 N.H. 706, 710 (1992) (quotation and ellipsis omitted). A default judgment can, however, constitute res judicata with respect to a "subsequent litigation involving the same cause of action." *Innie v. W & R, Inc.*, 116 N.H. 315, 316 (1976). Thus, we must determine whether the plaintiff's domestic violence petition involved the same cause of action as the Texas divorce proceedings.

"The term 'cause of action' is defined as the right to recover, regardless of the theory of recovery." *Marston*, 135 N.H. at 710 (quotation omitted). We have recognized it as "long-settled that a prior divorce decree acts as a bar to a subsequent action for *divorce*, as to the same ground and every issue actually litigated." *Aubert v. Aubert*, 129 N.H. 422, 425-26 (1987). We held in *Aubert*, however, that a prior divorce decree does not preclude a subsequent tort action based upon the same incident that constituted the extreme cruelty grounds for the divorce. *See id.* at 425-26. In deciding that the two proceedings did not involve the same cause of action, we noted that despite having "emphasized that a change in labels is not sufficient to remove the preclusive effect of a prior adjudication, we think it clear that a civil action in tort is fundamentally different from a divorce proceeding, and that the respective issues involved are entirely distinct." *Id.* at 426 (quotation, citation and brackets omitted).

■ The question here is closer because while we noted in *Aubert* that one cannot recover damages for personal injuries in a divorce action, *see id.*, one can obtain a restraining order in a divorce proceeding in both New Hampshire and Texas, *see* RSA 458:16 (Supp. 2003); Tex. Fam. Code Ann. §§ 6.501, 6.504 (Vernon 1998 & Supp. 2004). Nevertheless, we conclude that a divorce decree should not automatically preclude, on res judicata grounds, the ability to file a domestic violence petition in New Hampshire.

We have recognized that even where issues are identical, "potential adverse impact on the public interest" may warrant relitigation of an action otherwise barred. *State v. Charpentier*, 126 N.H. 56, 61 (1985). It has been noted that "there are strong policy reasons for allowing a court to issue a protection order *after* a divorce or dissolution has become final." *Felton v. Felton*, 679 N.E.2d 672, 676 (Ohio 1997). "Women who are divorced or separated are at higher risk of assault than married women.

The risk of assault is greatest when a woman leaves or threatens to leave an abusive relationship. Nonfatal violence often escalates once a battered woman attempts to end the relationship." *Id.* at 676-77 (quotation and footnotes omitted).

Thus, on public policy grounds, we would be reluctant to require, as the defendant's argument would logically have us do, that an allegedly battered spouse request protective orders while a divorce action is pending or be barred from later seeking relief. We particularly decline to find res judicata preclusion in this case where the record is unclear as to dates and details of the incidents alleged in the Texas and New Hampshire actions. As the trial court recognized, the domestic violence petition may well involve subsequent incidents of abuse, particularly with respect to the threatening telephone calls. *Cf. Schwartz v. State*, 135 N.H. 470, 474 (1992) (noting, in finding res judicata inapplicable to second suit on identical theories of relief but different facts, that the "plaintiff is under no obligation to amend the first suit to include factual matters that both arose after the commencement of the suit, and, in fact, support a claim on their own"). Because the party asserting an affirmative defense of res judicata bears the burden of proof as to the identity of issues, we reject the defendant's res judicata claim. *See Charpentier*, 126 N.H. at 60.

The defendant's remaining argument concerns the trial judge's communication with the Texas court. The plaintiff contends that the communication constituted a proper attempt, under the Uniform Child Custody Jurisdiction Act, RSA ch. 458-A (1992 & Supp. 2003), "to exchange information and to resolve a jurisdictional matter." The defendant, however, asserts that the trial judge's "inquiry went beyond the simple assessment of the status of the case and into other issues." Specifically, he argues that "[t]he questioning of the staff in Texas was done with the purpose of corroborating or confirming [the plaintiff's] testimony that she did not receive notice" of the final hearing in Texas. The defendant therefore contends that the trial judge's contact with the Texas court was an improper *ex parte* communication, "constituted a taking of evidence and was neither under oath nor subject to cross-examination."

The defendant moved for the judge to recuse herself and vacate her prior orders. He obtained only a portion of the relief sought, and now contends that the judge erred in not vacating all of her orders. The defendant cites *Blaisdell v. City of Rochester*, 135 N.H. 589 (1992), for the proposition that judges who recuse themselves are obligated to vacate all outstanding orders. We do not, however, read *Blaisdell* as broadly as the defendant advocates, and accordingly, decline to apply it to the instant case.

This case involves discrete instances of *ex parte* communication between the judge and the Texas court occurring in the midst of the proceeding. The communications were disclosed by the judge and their effect upon her ruling clearly appears in her opinion. Specifically, the judge received factual information on whether the plaintiff received notice of the Texas final hearing, and that information was used solely to support the decision that res judicata should not bar the domestic violence petition.

██ Under these circumstances, we decline to apply *Blaisdell* and instead employ a harmless error standard to determine whether the judge's orders may stand. Both the trial court and this court identified other grounds that independently compel the conclusion that res judicata is inapplicable. Thus, even assuming, without deciding, that the judge's *ex parte* communication with the Texas court constituted error, it is harmless. *Cf. Executive Mgmt, Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 479 (Nev. 1998) (even if judge's *ex parte* consultation of judge in prior case was error, it was harmless where judge could have independently come to decision to dismiss on basis of res judicata).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.