Rockingham
No. 2009-798

JEFFREY M. GRAY

v.

TERI E. KELLY & a.

Submitted: September 8, 2010
Opinion Issued: November 24, 2010

Jeffrey M. Gray, by brief, *pro se*.

*Romeo & Ryan*, of Lowell, Massachusetts (*Michael T. Ryan* on the brief), for defendant Teri E. Kelly.

Lisa A. Sorenson, *pro se*, filed no brief.

DUGGAN, J. The plaintiff, Jeffrey Gray, appeals the granting of defendant Teri Kelly's motion to dismiss by the Superior Court (*Nadeau*, J.). We affirm in part, vacate in part and remand.

The record supports the following facts. Gray lived at Kelly's residence following his 2002 divorce until approximately August 2004, when he moved out. Gray, however, left some of his personal property at Kelly's home. On February 7, 2006, the Salem Family Division (*DalPra*, M.) issued a final order in a domestic violence action filed by Kelly against Gray providing that "[Gray] shall retrieve his belongings from [Kelly's] residence in 30 days. His failure to do so shall result in [Kelly] being allowed to dispose of same." Gray did not attend this hearing, nor did he appeal the order. The order became final on March 10, 2006, and the parties agree that Kelly did not dispose of any of Gray's property prior to that date. Gray made no attempt to retrieve his property until April 1, 2006.

Gray then filed two separate actions against Kelly, both of which demanded the return of his property. On April 3, 2006, he filed a domestic violence action in the Salem Family Division, but later agreed to dismiss the suit after the court determined it could not resolve any matters relating to his property. On April 17, 2006, he filed a civil action in superior court that is the subject of this appeal, alleging that Kelly wrongfully disposed of and refused to return his personal property. He later amended the writ to add a count for replevin and to add his sister, Lisa Sorenson, as a defendant after he learned that Kelly gave Sorenson some of the property in question.

Soon after filing suit, Gray filed for an *ex parte* attachment of Kelly's property, which the superior court granted. However, the court vacated the attachment after a hearing "based on Master DalPra's order of 2/7/06." Then, in January 2008, Kelly filed her first motion to dismiss, which claimed that the parties had previously litigated Gray's property claims and that res judicata precluded further litigation. Gray contended that res judicata did not apply because the prior domestic violence proceeding and his current suit involved two different causes of action. The court denied the motion "for the reasons contained in [Gray's] objection." In October 2009, the court held a trial management conference at which Kelly again argued that res judicata barred Gray's suit. The court requested that Kelly re-file her motion to dismiss, which Kelly did. She argued that Gray's claims were precluded by both res judicata and collateral estoppel. The court granted Kelly's motion the next day because it "determine[d] that it should have granted the original motion." Gray then appealed.

On appeal, Gray first argues that res judicata does not preclude his suit because a "domestic violence action is fundamentally different from a replevin and damages action." He also claims that collateral estoppel is inapplicable because he defaulted in the February 2006 domestic violence action, and, therefore, did not actually litigate ownership of his property. In addition to arguing that his claims are not precluded, Gray contends that the trial court unsustainably exercised its discretion when it reversed its

initial decision to deny Kelly's first motion to dismiss. Finally, he argues that the February 2006 order did not take effect until the expiration of the appeal period and he had thirty days from that time to retrieve his property.

■ Generally, when reviewing a trial court's ruling on a motion to dismiss, we consider "whether the petitioner's allegations are reasonably susceptible of a construction that would permit recovery." *State v. Lake Winnipesaukee Resort*, 159 N.H. 42, 45 (2009). Kelly, however, moved to dismiss based exclusively upon res judicata and collateral estoppel. Both doctrines are affirmative defenses and Kelly bears the burden of proving that they apply. *McNair v. McNair*, 151 N.H. 343, 354 (2004); *In re Zachary G.*, 159 N.H. 146, 151 (2009). Because the trial court determined that res judicata applied as a matter of law, our review is *de novo*. *Lake Winnipesaukee Resort*, 159 N.H. at 45.

■■ We begin with the plaintiff's argument that res judicata and collateral estoppel do not preclude his claim.

> In its most basic formulation, the doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such a party from relitigating any issue or fact actually litigated and determined in the prior action. Res judicata, or "claim preclusion," is a broader remedy and bars the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation.

*McNair*, 151 N.H. at 352-53 (quotation omitted). Gray contends that collateral estoppel does not apply because he did not appear at the February 2006 hearing on Kelly's domestic violence action and the Salem Family Division final order was entered upon his default. We need not address this argument, however, because even if a default judgment cannot constitute collateral estoppel, *see id.* at 353, a default judgment can constitute res judicata in subsequent litigation involving the same cause of action, *id.*

■ "The doctrine of res judicata prevents parties from relitigating matters actually litigated and matters that *could have* been litigated in the first action." *Morgenroth & Assoc's v. State*, 126 N.H. 266, 269 (1985) (quotation omitted; emphasis added). The doctrine applies if three elements are met: (1) the parties are the same or in privity with one another; (2) the same cause of action was before the court in both instances; and (3) the first action ended with a final judgment on the merits. *In re Juvenile 2004-637*, 152 N.H. 805, 808 (2005). Gray does not contest the first and the third elements. Accordingly, we must determine only whether the February 2006

domestic violence action involved the same cause of action as the plaintiff's subsequent suit for replevin and damages.

As an initial matter, Gray asserts throughout his brief that the prior action in this litigation is the domestic violence action that he filed in April 2006 and then voluntarily dismissed in June 2006. The court in that case found that "it [could not] resolve the matters relating to property." Accordingly, Gray claims that the court's ruling has no preclusive effect because it did not adjudicate any of the property issues. However, Gray's argument is misplaced because the February 2006 order did make a final ruling regarding his property, and we consider only that order in determining whether Gray's claims are precluded.

■■ Turning to the preclusive effect of the February 2006 order, we have defined the term "cause of action" as "the right to recover, regardless of the theory of recovery." *McNair*, 151 N.H. at 353 (quotations omitted). It "refers to all theories on which relief could be claimed on the basis of the factual transaction in question." *Aubert v. Aubert*, 129 N.H. 422, 426 (1987) (quotation and brackets omitted). To determine whether Gray's claim is precluded we must determine whether the type of relief available concerning property in a replevin action is available in a domestic violence action. We hold that the same type of relief is available in both cases and that res judicata precludes Gray from re-litigating his claim.

■ Replevin is a proceeding in which the plaintiff seeks to recover possession of personal property that has been taken from him. *See* 66 AM. JUR. 2D *Replevin* § 1 (2001). While Gray points out that the purpose of a domestic violence action is to determine whether domestic violence occurred, RSA 173-B:5 clearly provides authority for the court to grant other forms of relief, including resolving disputes regarding personal property. *See* RSA 173-B:5, I(b)(3) (Supp. 2009). In this case, both actions are based on the same factual transaction — that is, the dispute concerning Gray and Kelly's separation. *See Appeal of Univ. System of N.H. Bd. of Trustees*, 147 N.H. 626, 629 (2002) (explaining that we look to whether both causes of action arose from the same transaction or occurrence); *see also Aubert*, 129 N.H. at 426 (endorsing a liberal approach in determining what constitutes a cause of action). While Gray may now assert a different legal theory, his claim still relies upon the same underlying facts. *See Kalil v. Town of Dummer Zoning Bd. of Adjustment*, 159 N.H. 725, 730 (2010) (rejecting the view that cause of action "is synonymous with the particular legal theory in which a party's claim for relief is framed" (quotation omitted)).

Gray also asserts that the Salem Family Division did not have the authority under RSA 173-B:5 to make an order regarding his property because he exclusively owned it and had no legal duty to support Kelly or

her children. "[T]his court is the final arbiter of the intent of the legislature as expressed in the words of a statute. When construing a statute's meaning, we first examine its language, and where possible, we ascribe the plain and ordinary meaning to words used." *Monahan-Fortin Properties v. Town of Hudson*, 148 N.H. 769, 771 (2002) (citation omitted). We do not interpret a statute in isolation, but construe it as part of the overall statutory scheme in order to effectuate its overall purpose and avoid an absurd or unjust result. *Id.*; *see also Big League Entm't v. Brox Indus.*, 149 N.H. 480, 483 (2003).

■ The provision Gray relies upon specifically authorizes the court to grant the plaintiff "the exclusive right of use and possession of the household furniture, [or] furnishings . . . unless the defendant exclusively owns such personal property and the defendant has no legal duty to support the plaintiff or minor children." RSA 173-B:5, I(b)(3). Therefore, for a court to make an order regarding the right to use or possess household property, it must make a determination regarding ownership of that property. The Salem Family Division made such a determination when it allowed Gray to "retrieve *his* belongings."

■ While the court provided that Gray could retrieve his property, it was also concerned for Kelly's safety as it found that Gray had abused Kelly. RSA chapter 173-B is primarily concerned with protecting domestic violence victims and their families, and when making a domestic violence order, the court has latitude in order to achieve this goal. *See Walker v. Walker*, 158 N.H. 602, 605 (2009) (explaining that the purpose of RSA chapter 173-B "is to preserve and protect the safety of the family unit for all family members by entitling victims of domestic violence to immediate and effective police protection and judicial relief" (quotations and ellipses omitted)). Therefore, the Salem Family Division also inferentially determined that Kelly would best be protected if Gray was forced to remove his belongings from her home within thirty days. *See Big League Entm't*, 149 N.H. at 483 (explaining we must interpret statutes as part of the overall statutory scheme). The order also provided that "[a] police officer shall be present to keep the peace," further indicating that the Salem Family Division was concerned for Kelly's safety.

■ ■ Additionally, at the February 2006 hearing, Gray had the opportunity to litigate the disposition of his property. He relinquished that opportunity when he did not appear before the Salem Family Division. *See Osman v. Gagnon*, 152 N.H. 359, 362 (2005) (noting that a valid judgment "finally negatives every defense that was or might have been raised" (quotation omitted)). While Gray now seeks compensatory damages, which

he claims are unavailable in a domestic violence action, res judicata bars a subsequent suit when, as here, the plaintiff seeks to "present . . . grounds or theories of the case not presented in the first action, or . . . to seek remedies or forms of relief not demanded in the first action." *Aubert*, 129 N.H. at 426 (quotations omitted). Therefore, we hold that res judicata bars the re-litigation of Gray's claim.

Gray next argues that the trial court unsustainably exercised its discretion in reversing its denial of Kelly's motion to dismiss because Kelly did not present any new evidence or arguments. A trial court, however, has the authority to revisit an earlier ruling on a motion to dismiss if it becomes aware that the ruling may be incorrect. *See Route 12 Books & Video v. Town of Troy*, 149 N.H. 569, 575 (2003).

Gray also contends that the February 7, 2006 order did not become final until thirty days after the expiration of the appeal period — on April 9, 2006 — and that he asked Kelly to return his property on April 1. He argues that because a judgment does not become final until thirty-one days after the date of the trial court's last order, *see* SUPER. CT. R. 74, the order did not take effect until the conclusion of the appeal period. We have previously distinguished between the date on which a judgment is "rendered" and when it becomes "final." *See State v. Looney*, 154 N.H. 801, 803 (2007). In *Looney*, we quoted approvingly from a decision of the Texas Court of Appeals, which stated that "[t]he judgment becomes *effective* once it is 'rendered.' A judgment is 'rendered' when the matter submitted to the court for adjudication is officially announced either orally in open court or by memorandum filed with the clerk." *Id.* (quotation and brackets omitted; emphasis added).

"Superior Court Rule 74 provides that a decree does not go to final judgment *if* a timely appeal is taken to [the Supreme Court]." *Rollins v. Rollins*, 122 N.H. 6, 9 (1982) (emphasis added). Therefore, while filing a timely appeal prevents a judgment from becoming final, a judgment is nonetheless effective from the time it is rendered unless a party files an appeal or obtains a stay. *See Looney*, 154 N.H. at 803; *see also Rollins*, 122 N.H. at 10 (noting a losing party can obtain a stay of an order to prevent it from taking effect); SUP. CT. R. 7-A cmt. (providing a procedural mechanism to stay the judgment of a lower tribunal that is not stayed by the filing of a timely appeal). We note that we have previously held that where a final order replaces a previously issued temporary order, the temporary order remains in effect during the pendency of any appeal *unless* the trial court specifically orders that the final order should remain in effect pending resolution of the appeal. *Rollins*, 122 N.H. at 10. While, in appropriate cases, a trial court may order that a final order remain in effect

during the pendency of an appeal, the general rule remains that timely appealing a trial court's final order stays it from taking effect. *See id.*

Accordingly, the Salem Family Division order became effective on the date it was rendered — February 7, 2006. Gray then had thirty days to appeal the order or request a stay. *See* SUPER. CT. R. 74. He did neither. Thus, the Salem Family Division order remained in effect during the period for filing an appeal. *See Looney,* 154 N.H. at 803; *see also* SUP. CT. R. 7-A. The order then became final thirty-one days after the Salem Family Division issued its order — on March 10, 2006 — because Gray failed to file a timely appeal. Because the Salem Family Division order was effective from the moment it was rendered and Gray did not appeal, the thirty-day window for Gray to collect his property also closed at that time.

RSA chapter 173-B provides further support for this conclusion. The entire statutory scheme is based upon providing immediate protection for victims of domestic violence. *See, e.g.,* RSA 173-B:4 (2002) (providing for temporary *ex parte* relief). If we were to agree with Gray and hold that the Salem Family Division order did not take effect until the conclusion of the appeal period, trial courts would be unable to provide domestic violence victims with immediate and effective relief. Moreover, the February 2006 domestic violence final order itself states, "THESE ORDERS ARE EFFECTIVE IMMEDIATELY AND REMAIN IN EFFECT FOR ONE YEAR." Gray does not dispute that he was properly served with a copy of the order. Accordingly, the restraining order itself put Gray on notice that the 30-day period began immediately and his argument is without merit.

Finally, Gray argues that even if res judicata bars further litigation against Kelly, the trial court erred in dismissing his claim against Sorenson because she was not a party to the Salem Family Division domestic violence action. Sorenson did not file a brief in this case and represented that she is in concurrence with Kelly's brief. Kelly argues that we should also affirm Sorenson's dismissal because Gray claims Sorenson will not return the same property that was the subject of the February 2006 order. While Sorenson was not a party to the Salem Family Division order, res judicata may apply if the parties are the same *or* in privity with one another. *See Sleeper v. Hoban Family P'ship,* 157 N.H. 530, 533 (2008). However, the parties did not address, and the court below did not make any findings, regarding the issue of privity. Therefore, we vacate the trial court's ruling on the motion to dismiss as it pertains to Sorenson, and remand to the trial court to determine the issue of privity in the first instance.

> *Affirmed in part; vacated in part; and remanded.*

DALIANIS and CONBOY, JJ., concurred.