**BARCLAYS BANK, S.A., Appellant,**

v.

**Basil A. TSAKOS & Laura Farmaki Tsakos, Appellees.**

**No. 86–1410.**

District of Columbia Court of Appeals.

Argued Dec. 8, 1987.

Decided June 3, 1988.

---

Geoffrey Judd Vitt, with whom Julie W. Davis, Washington, D.C., was on the brief, for appellant.

Michael W. Beasley, Washington, D.C., for appellees.

Before NEWMAN, ROGERS and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellant Barclays Bank., S.A., (Bank) is a corporation organized under the laws of France and a wholly-owned subsidiary of the well-known English bank of the same name. Appellees Basil A. and Laura Farmaki Tsakos (the Tsakos) are Greek citizens now living in France. The Bank brought suit against the Tsakos in Superior Court, levying a prejudgment attachment against a cooperative apartment owned by the Tsakos in the Watergate complex. The case was dismissed on grounds of *forum non conveniens*. The Bank argues that 1) by reason of the levy of attachment, at least some limited jurisdiction may constitutionally be asserted by our courts relating to the entirely foreign controversy between the parties and 2) the trial court abused its discretion in dismissing the complaint on grounds of *forum non conveniens*. Holding that such jurisdiction exists and believing that the trial court may not have taken into account the possible alternative of simply staying the action pending completion of litigation in Europe, we reverse the dismissal and remand for further consideration.

I.

According to the Bank's amended complaint, the Tsakos guaranteed a $1.4 million loan to their son from a Paris office of the Bank. The loan is in default. The Bank brought actions on the guaranty against the Tsakos in France and Switzerland, as well as the District of Columbia. Personal service was effected in both foreign actions. Although prejudgment writs of attachment were obtained in those foreign actions, the Tsakos had previously taken steps to move their assets in both countries beyond the reach of the Bank.

The Bank's complaint here also set forth a claim based on fraudulent conveyance; the Bank alleged that the Tsakos were about to sell their apartment and remove the proceeds out of the District in order to defeat the just claim of the Bank.

Pursuant to D.C. Code § 16–501 (1981), the Bank obtained a prejudgment attachment against the Watergate apartment, on grounds both of the Tsakos' non-residency and of the impending sale of the apartment, the Tsakos' only asset in the District, and removal from the District of the proceeds.[1]

---

1. The required affidavit to obtain an attachment must set forth at least one of five categories of facts, including:

(1) defendant is a foreign corporation or is not a resident of the District, or has been absent therefrom for at least six months;

The Tsakos moved to quash the attachment and dismiss the suit based on lack of personal jurisdiction. The trial court ordered the complaint dismissed for want of such jurisdiction but permitted an amended complaint to be filed asserting *quasi in rem* jurisdiction based on the attachment of the apartment. The Tsakos again moved to dismiss, asserting lack of *quasi in rem* jurisdiction under the holding of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and raising as an additional ground for dismissal *forum non conveniens.*

The trial court granted the motion to dismiss on grounds of *forum non conveniens* and concluded that *"ipso facto* the attachment before judgment should be quashed." It did not expressly rule on the jurisdictional argument. The Bank has appealed to this court.

## II.

We turn first to the question of jurisdiction. Prior to 1977, this would have presented no issue. *Quasi in rem* jurisdiction was regularly asserted over a nonresident defendant through the seizure of an asset belonging to the defendant located within the tribunal's territorial jurisdiction. *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); *Western Urn Mfg. v. American Pipe & Steel Corp.*, 109 U.S. App.D.C. 145, 284 F.2d 279 (1960). In the District, we interpreted our prejudgment attachment statute to open our doors to such litigation even where both parties were nonresidents and the cause of action arose elsewhere. *See Rice v. Salnier*, 86 A.2d 175 (D.C.1952).

In 1977, the Supreme Court decided *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569. It held that the seizure of property belonging to a defendant could not in itself suffice for jurisdiction; rather, "all assertions of state-court jurisdiction must be evaluated according to the standards set

\* \* \* \* \* \*

(3) he has removed or is about to remove some or all of his property from the District, so as to defeat just demands against him.

forth in *International Shoe* and its progeny." *Id.* at 212, 97 S.Ct. at 2584. The case referred to, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), had encapsulated the test thus: "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* 326 U.S. at 316, 66 S.Ct. at 158 (citation omitted).

Although the full implications of *Shaffer v. Heitner* are to this day yet to be worked out, the decision does not make irrelevant the presence of assets of a defendant within a tribunal's territorial jurisdiction. This fact in itself may be included in the congeries of considerations bearing upon the issue of sufficient "minimum contacts." *See, e.g., Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017, 1022–23 (2d Cir.1978). Furthermore, the opinion recognizes the relevance of such considerations as the movement of property to evade obligations and the satisfaction of judgments obtained where *in personam* jurisdiction unquestionably lies, through levy on assets located elsewhere. 433 U.S. at 210 & nn. 35 & 36, 97 S.Ct. at 2583 & nn. 35 & 36. Indeed, most relevant to the case now before us, in its discussion of the primary rationale underlying the old *quasi in rem* practice (that a wrongdoer should not be permitted to avoid payment of obligations by removing his assets to a place where he is not subject to an *in personam* suit) the Court specifically notes that "[a]t most, [this justification] suggests that a State in which property is located should have jurisdiction to attach that property, by use of proper procedures, as security for a judgment being sought in a forum where the litigation can be maintained consistently with *International Shoe.*" *Id.* at 210, 97 S.Ct. at 2583 (footnote omitted).[2]

D.C.Code § 16–501(d) (1981). The Bank's basic position is that the apartment may be the only asset of the Tsakos effectively available anywhere to satisfy a judgment against the Tsakos.

**2.** We do not read the Court to preclude such a

In *Carolina Power & Light Co. v. Uranex*, 451 F.Supp. 1044 (N.D.Cal.1977), the applicability of this approach as a basis of jurisdiction consistent with *Shaffer v. Heitner* was put to test. There, the court considered whether it could maintain a prejudgment garnishment under the California statute where no personal jurisdiction lay because neither the defendant French corporation nor the plaintiff's claims had sufficient connection with California. It concluded:

[A] fair reading of the Supreme Court's opinion in *Shaffer v. Heitner*, requires that the application of notions of "fair play and substantial justice" include consideration of both the jeopardy to plaintiff's ultimate recovery and the limited nature of the jurisdiction sought, that is, jurisdiction merely to order the attachment and not to adjudicate the underlying merits of the controversies. In some circumstances, even limited jurisdiction to attach property would nevertheless violate standards of "fair play and substantial justice," for example, where the attached property was merely moving through the state in transit to another country. But where the facts show that the presence of defendant's property within the state is not merely fortuitous, and that the attaching jurisdiction is not an inconvenient area for defendant to litigate the limited issues arising from the attachment, assumption of limited jurisdiction to issue the attachment pending litigation in another forum would be constitutionally permissible. *Id.* at 1048.[3]

██ We think this principle applies to the case before us. As we understand the Bank's present posture, it is willing to forbear adjudication here of the underlying claim against the Tsakos, which can await the outcome of the litigation in Europe. What the Bank seeks at bottom is simply to preserve the status quo of the attachment lien pending that outcome.

We do not deal here with just a barebones attachment to secure jurisdiction. An allegation is made of intended effective removal of the property by way of sale and nonavailability of assets elsewhere. Furthermore, the Tsakos' historical contacts with the District consist of more than their ownership of property for the moment located in the District. As their brief itself acknowledges, Mr. Tsakos operated in the early 1980's a business venture from an office in Washington, D.C., and he and his wife lived for a period of time between 1982 and 1984 in the apartment.[4] The trial court found that they had "resided" there. Furthermore, the property attached is not in transitory passage through the District nor an intangible; it is immovable realty.[5] Although these contacts existed prior to the making of the disputed loan and may be insufficient to support *in personam* jurisdiction, a point the Bank does not press upon us and on which we express no views, they need not be ignored.[6] We think them

use of prejudgment attachment in appropriate cases simply because it uses the levy of a post-judgment attachment in a foreign jurisdiction as an example of a permissible action under its new holding. *Id.* at 210 n. 36, 97 S.Ct. at 2583 n. 36.

3. In the years prior to *Shaffer v. Heitner*, scholars had been proposing precisely such a form of special jurisdiction over assets pending resolution of disputes in other forums, in lieu of then-existing *quasi in rem* analysis. *See, e.g.*, von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121, 1178 (1966).

4. The Tsakos left the District in August or September of 1984. The Bank loan to their son was made in December 1984.

5. The majority in *Shaffer v. Heitner* emphasized that "[a]ppellee Heitner did not allege and does

not now claim that appellants have ever set foot in Delaware.... Appellants have simply had nothing to do with the State of Delaware," 433 U.S. at 213, 216, 97 S.Ct. at 2584, 2586, and two concurring Justices made their view clear that the majority opinion "should not be read to invalidate *quasi in rem* jurisdiction where real estate is involved." 433 U.S. at 219, 97 S.Ct. at 2587 (Stevens, J., agreeing with Powell, J.).

6. The Tsakos argue that the critical point for determining the presence of minimum contacts is the time of filing of suit, or, at the earliest, the time of the occurrence at issue. They cite *Carter v. Massey*, 436 F.Supp. 29 (D.Md.1977), a suit involving long-arm personal jurisdiction. There, the significant contacts between Maryland and the defendants came into being after the acts sued upon but before the complaint was filed. The case held that the amenability to suit

sufficient, when coupled with a continuing presence by way of real property ownership, to warrant imposing upon the Tsakos any steps necessary to deal with issues arising [7] from the attachment itself. *Cf. Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017 (2d Cir.1978) (garnishment of debt in New York unrelated to plaintiff's claim; defendant's business contacts with New York, although insufficient for personal jurisdiction, could require it to defend interest in the debt on *quasi in rem* jurisdictional grounds); *accord Excel Shipping Corp. v. Seatrain Int'l, S.A.,* 584 F.Supp. 734 (E.D.N.Y.1984). In short, we follow *Uranex* and hold that the trial court had jurisdiction to grant the Bank the provisional relief sought.[8]

### III.

The trial court dismissed the case on grounds of *forum non conveniens.* The relief now sought by the Bank does not require it to contest the court's determination that "the Superior Court of the District of Columbia is not a convenient forum for the trial of this lawsuit." Rather, the question is whether the court erred in dismissing the complaint rather than holding it in abeyance pending resolution of the dispute in France.

▮ The trial court did not address this issue of possible abatement. The court having concluded, as we think was well

within its discretion, that the substance of the lawsuit should not be tried here, the dismissal appears to have been thought to follow as a matter of course. This is too mechanical an application of the doctrine.

Our statutory law dealing with the *forum non conveniens* doctrine expressly contemplates the possibility of a stay in lieu of dismissal:

> When any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may *stay* or dismiss such civil action in whole or in part on any conditions that may be just.

D.C.Code § 13–425 (1981) (emphasis added). Concern that ultimate justice not be thwarted in the application of the doctrine is reflected in the requirement that an "essential predicate" to the invocation of the doctrine be the availability of an alternate forum. *Mobley v. Southern Railway,* 418 A.2d 1044, 1047 (D.C.1980). Thus, where the doctrine has been raised, we have conditioned dismissal of a complaint brought here upon acceptance of process at the more convenient forum and forbearance there against a similar assertion of inconvenience. *Dorati v. Dorati,* 342 A.2d 18, 20 n. 3 (D.C.1975); *Wilburn v. Wilburn,* 192 A.2d 797, 800 (D.C.1963). In *Dorati,* we expressed particular concern where the convenient forum was located without the United States.

---

could be measured by contacts at the time of the complaint. It did not hold that such contact must be measured at that point. Indeed, it cited a prior case holding that a defendant could not defeat personal jurisdiction by ceasing business in the forum state. *Strick v. Cravens Homalloy (Sheffield) Ltd.,* 352 F.Supp. 844, 847 (E.D.Pa. 1972). In any event, whatever the time may be that the contacts are assessed, the existence of prior ties between the forum and the defendant may be relevant to the issue of constitutionally sufficient contacts, which do not stand frozen at a particular moment.

**7.** A defendant has certain constitutional due process procedural rights when a plaintiff attaches property. *See North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (and cases cited). Our attachment statute also provides for certain rights. *See* D.C.Code § 16–501 to 584 (1981).

**8.** A lucid discussion of the impact of *Shaffer v. Heitner* on *quasi in rem* jurisdiction in the credi-

tor context, which time does not seem to have attenuated, may be found in Riesenfeld, *Shaffer v. Heitner: Holding, Implications, Forebodings,* 30 Hast.L.J. 1183 (1979). He observes:

> The majority opinion in *Shaffer* suggested the survival of certain categories of asset-based jurisdiction.... The latter category [cases where the suit is not asset-related] includes three special settings: absence of another forum, enforcement of a judgment already obtained, and those cases in which attachment in one forum must be followed by the institution and successful completion of an in personam action in another forum.

*Id.* 433 U.S. at 196, 97 S.Ct. at 2575. In *Louring v. Kuwait Boulder Shipping Co.,* 455 F.Supp. 630 (D.Conn.1977), *quasi in rem* jurisdiction was asserted where defendant, a Kuwait corporation, was outside the *in personam* jurisdiction of any United States court.

We recently had occasion to apply these general considerations in *Mills v. Aetna Fire Underwriters Insurance Co.*, 511 A.2d 8 (D.C.1986). The trial court had granted the insurer's motion to dismiss on *forum non conveniens.* On appeal, we reversed, holding it mandatory that the dismissal be conditioned upon the insurer's waiver of the statute of limitations in the more convenient forum, so that there exist in fact "an alternate forum."

One of the factors to be weighed in determining whether to apply the doctrine of *forum non conveniens* is the enforceability of a judgment once obtained. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Creamer v. Creamer*, 482 A.2d 346, 353 (D.C.1984). We think it is also a factor that may be taken into account in determining whether to stay or to dismiss. Our jurisdiction has been receptive to the use of the device of prejudgment attachment, even to secure the payment of debts not yet due, where the debtor threatens to remove property to defeat creditor claims. D.C.Code § 16–503 ("Attachment for debts not due"). In *Lomax v. Spriggs*, 404 A.2d 943 (D.C.1979), we approved the use of attachment as a device to freeze assets pending revival of an expired judgment. Indeed, in *Wilburn, supra*, we held it an abuse of discretion to dismiss a case on grounds of *forum non conveniens* where the defendant's "continued mobility and elusiveness" made it unclear that the action could be successfully pursued in admittedly more convenient forums.

Moreover, "the mere pendency of litigation elsewhere does not bar suit in the District of Columbia," *Sartori v. Society of American Military Engineers*, 499 A.2d 883, 888 (D.C.1985) and we see no inherent reason why the stay here may not await the outcome of the foreign actions.[9] Our willingness to cooperate with foreign tribunals is illustrated by the adoption here in 1970, *see* D.C.Code §§ 13–401 to –434, of a major portion of the Uniform Interstate and International Procedure Act, which recognizes the reality that "domestic courts are being requested with greater frequency to render assistance to out-of-state tribunals and litigants." 13 U.L.A. 355 prefatory note (1986). *See* D.C.Code § 13–434 ("Assistance to tribunals and litigants outside the District of Columbia").[10]

Scholarly authority also has supported the use, where appropriate, of stays instead of dismissal in attachment cases pending resolution of substantive disputes in other more convenient forums.

> Even prior to *Shaffer v. Heitner*, some jurisdictions permitted the defendant in a quasi-in-rem action to make a special appearance for the purpose of pleading forum non conveniens. The best practice following a granting of that motion was not dismissal of the action and release of the attachment, but a stay of all future proceedings until a disposition of the controversy in the proper forum.

Riesenfeld, *supra* note 8 at 1196.[11]

As an example of a case adopting this view, in addition to *Uranex*, Professor

---

**9.** The Tsakos argue that an attachment may not exist in the abstract but instead must be linked to a suit on the merits. Our law does indeed require that an attachment accompany a "civil action." D.C.Code § 16–501(a). However, we do not see that a stay causes the related civil action to become a legal nonentity, especially when a component of the complaint is based on fraudulent conveyance. An attachment for a debt not yet due, under § 16–503, is effective even though, by the very terms of the section, a judgment cannot be entered until the debt becomes due.

**10.** Relevant to the case before us, it is interesting to note that the French standard practice is to permit seizure of assets with a stay until foreign proceedings are completed. A. VON MEH-

REN & D. TRAUTMAN, THE LAW OF MULTISTATE PROBLEMS 695–96 (1965).

**11.** *See also* S. RIESENFELD, CREDITORS' REMEDIES AND DEBTORS' PROTECTION 391 n. 9, 413 (4th ed. 1987). In an earlier, pre-*Shaffer v. Heitner* second edition of this work, he had elaborated:

> There is a growing recognition in statutes, court rules, and case law that neither in personam jurisdiction under a long-arm statute nor quasi-in-rem jurisdiction bars a defendant from moving for a stay or dismissal of the proceedings if there is a more convenient forum. Of course in the case of an attachment stay rather than dismissal would ordinarily be appropriate ... [R]esort to quasi in rem proceedings in the *forum collectionis* is the shortest and surest way for the creditor to

Riesenfeld cites *Fitch v. Whaples*, 220 A.2d 170 (Me.1966).[12] There, the plaintiff had commenced an action by attachment of defendant's real property in Maine. An action on the underlying claim was already pending in Connecticut, the domicile of both parties. The trial court held that because of the pending case in Connecticut, the Maine complaint must be dismissed as a matter of law. The appellate court reversed, saying:

> The dismissal of the action, if permitted to stand, would effectively discharge the attachment upon the defendant's real estate in Maine. How prejudicial such action may be to the rights of the plaintiff in obtaining full redress in his action, should he be entitled to a verdict, cannot be determined without proof of the circumstances surrounding the situation of the parties, the value and condition of the respective properties under attachment in Maine and in Connecticut, the existence of any encumbrances thereon, the situs of the evidence, and the expeditiousness or delay involved in a trial in the foreign state.
>
> There must be a balancing of the special equities in each case.

*Id.* at 174.

It is, of course, true that the decision to apply the doctrine of *forum non conveniens* is entrusted to the sound discretion of the trial court and "will be reversed on appeal only upon a clear showing of abuse of discretion." *Mills, supra,* 511 A.2d at 10. The same standard should apply to the decision under D.C.Code § 13–425 whether to dismiss or stay. However, it appears to

us that the trial court may have assumed that having determined that the merits of the complaint should not be tried in our court under the doctrine of *forum non conveniens,* it had no power or discretion to maintain the pretrial attachment pending the outcome of the foreign litigation. Since we would usurp the role of the trial court were we to exercise such discretion, we must remand. *Wright v. United States,* 508 A.2d 915, 919–20 & n. 3 (D.C. 1986). "[R]eversal should follow if it is discerned that the trial court did not recognize its capacity to exercise discretion or did not purport to exercise it." *Johnson v. United States,* 398 A.2d 354, 367 (D.C. 1979).

Accordingly, the order granting the defendants' motion to dismiss is set aside and the case remanded for further proceedings consistent with this opinion.

*So ordered.*

---

pin down property where he finds it and to assure priority or collectability of his claim. In cases calling for such relief the court should stay further proceedings until controverted matters are litigated in the appropriate forum. Outright dismissal on the ground of forum non conveniens has too drastic effects, although some courts have proceeded in that fashion.

*Id.* at 248 n. 30, 395–96 (citations omitted).

Whether Professor Reisenfeld is correct in stating that a stay "should" be normal practice is an issue we do not reach. It is enough here to say that a stay in lieu of dismissal is a permissible discretionary action.

12. As a perhaps contra case, Professor Riesenfeld refers to our case of *Midland Finance of Cumberland v. Green,* 279 A.2d 518 (D.C.1971), which was also cited by the Tsakos to the trial court in their argument for dismissal. We do not read the case to require dismissal. It involved the garnishment of wages owed a North Carolina employee on account of a debt owed to a Maryland creditor by service upon an agent of the employer in the District. We upheld the dismissal on grounds of *forum non conveniens,* but no suggestion was made of the alternative of a stay. Indeed, we said that dismissal is the "usual" relief afforded in *forum non conveniens* cases, *id.* at 521, thus implicitly recognizing that such an action was not mandatory.