Rockingham
No. 2004-686

CONTINENTAL BIOMASS INDUSTRIES, INC.

v.

ENVIRONMENTAL MACHINERY COMPANY & a.

Argued: March 23, 2005
Opinion Issued: June 14, 2005

*Shaines & McEachern, P.A.*, of Portsmouth (*Robert A. Shaines* and *Alec L. McEachern* on the brief, and *Mr. McEachern* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Charles R. Powell, III* and *Elizabeth J. Baker* on the brief, and *Mr. Powell* orally), for defendant FirstMerit Bank, N.A.

DUGGAN, J. Defendant FirstMerit Bank, N.A. (FirstMerit) appeals an order of the Superior Court (*McHugh*, J.) denying its motion to dismiss for lack of personal jurisdiction and improper service. We reverse.

In considering FirstMerit's motion to dismiss, the trial court found the following facts. The plaintiff, Continental Biomass Industries, Inc. (CBI), is a New Hampshire corporation engaged in the business of manufacturing, selling and servicing heavy equipment used for grinding and reducing construction debris and other materials. Defendant Environmental Machinery Company (EMC) is a corporation doing business in Columbus, Ohio. In June 2001, CBI sold a 2001 wood hog grinder to EMC for $439,600. EMC financed the purchase by obtaining a loan from FirstMerit, a bank doing business in Columbus, Ohio, and organized under the laws of Ohio. Upon receipt of EMC's payment in full, CBI shipped the grinder to EMC in Ohio.

FirstMerit filed a UCC financing statement with the Ohio Secretary of State in January 2002 to secure its interest in the grinder. Prior to the filing of FirstMerit's UCC statement, defendant Bank One, N.A. had filed three separate UCC financing statements with the Ohio Secretary of State that granted Bank One a security interest in all of EMC's after-acquired equipment.

In late 2002 or early 2003, the grinder was damaged in a fire in Ohio. As a result, EMC delivered the grinder to CBI in New Hampshire for repair in March 2003. CBI completed the repairs in November 2003 and issued a repair invoice to EMC totaling $252,120.46. In the interim, FirstMerit received the insurance proceeds resulting from the fire damage and held them on EMC's behalf for future payment of the repair costs.

On January 13, 2004, CBI obtained a post-judgment attachment on the grinder in New Hampshire to secure its judgment against EMC in an unrelated civil claim that CBI had initiated in September 2002 in New Hampshire. CBI also filed a bulky article attachment on the grinder with the New Hampshire Secretary of State. *See* RSA 511:23 (Supp. 2004). Two days later, CBI received full payment for the repairs it had made to the grinder. CBI then sent a demand for an account to FirstMerit pursuant to RSA 511:27 (1997) to determine the amount of the security interest that FirstMerit retained in the grinder. When FirstMerit received the demand for an account, it contacted CBI to inquire about it and was informed that CBI had attached the grinder to enforce its judgment against EMC in the unrelated case. FirstMerit responded to CBI's demand for an account on February 11, 2004. CBI, however, construed this response as late and filed an action to compel the sheriff of Rockingham County to levy on the grinder free and clear of FirstMerit's security interest.

FirstMerit appeared specially and moved to dismiss upon the bases that CBI failed to effectuate proper service of process and that New Hampshire courts cannot exercise personal jurisdiction over it in this case. The trial court found that FirstMerit was properly served and had sufficient contacts with New Hampshire to support jurisdiction. FirstMerit appeals, arguing that CBI failed to allege and prove facts sufficient to meet the requirements for personal jurisdiction.

The plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction. *Lyme Timber Co. v. DSF Investors*, 150 N.H. 557, 559 (2004). The plaintiff need make only a *prima facie* showing of jurisdictional facts to defeat a defendant's motion to dismiss. *Metcalf v. Lawson*, 148 N.H. 35, 37 (2002). Where a *prima facie* evidence standard is employed, we review a trial court's ruling on a motion to dismiss for lack of personal jurisdiction *de novo. Lyme Timber*, 150 N.H. at 559.

First, we address the type of personal jurisdiction at issue in this case. FirstMerit argues that the trial court erred in finding that it had *in rem* jurisdiction over the grinder, and instead should have evaluated whether it had *quasi in rem* jurisdiction over the bank as a defendant.

■ The difference between *in rem* and *quasi in rem* jurisdiction is significant because the effect of the judgment varies depending upon the type of action. *See* 4A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1070, at 285 (3d ed. 2002).

> The essential function of an action in rem is the determination of title to or the status of property located—physically or legally—within the court's jurisdiction. Conceptually, in rem jurisdiction operates directly on the property and the court's

> judgment is effective against all persons who have an interest in the property.

*Id.* at 286; *see Shaffer v. Heitner*, 433 U.S. 186, 199 & n.17 (1977). An action *in rem* "has the practical effect of establishing unassailable title in the [res or] thing because no one, whether named as a party or not, can later attack the judgment on the ground that the court lacked personal jurisdiction." 1 R. CASAD & W. RICHMAN, JURISDICTION IN CIVIL ACTIONS § 2-6, at 180 (3d ed. 1998). Examples include actions to quiet title, partition actions, eminent domain proceedings and forfeiture. *Id.*; WRIGHT & MILLER, *supra* § 1070, at 286.

■ In contrast, "[a] judgment *quasi in rem* affects the interests of particular persons in designated property." *Shaffer*, 433 U.S. at 199 n.17 (quotation omitted). Courts have recognized two types of *quasi in rem* jurisdiction:

> In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him.

*Id.* (quotation omitted). The first type of *quasi in rem* jurisdiction is similar to *in rem* jurisdiction in that the dispute between the parties is over the property itself. CASAD & RICHMAN, *supra* § 2-6, at 187. An example of this type of action is the modern mortgage foreclosure. *Id.* § 1-1, at 9. In *quasi in rem* actions of the second type, the plaintiff's cause of action against the defendant is personal and not related to a proprietary interest in specific property. *Id.* In such a case, the court's jurisdiction over the defendant's property is invoked through attachment, garnishment or a similar procedure. *Id.*; *see, e.g., Altshuler Genealogical Service v. Farris*, 128 N.H. 98, 101 (1986) (holding that court lacked *quasi in rem* jurisdiction where plaintiff brought suit for breach of contract against non-resident defendant and attached the defendant's interest in a New Hampshire estate to satisfy the debt).

■ Here, the plaintiff's cause of action centers on the respective parties' proprietary interests in the disputed property (the grinder). CBI sought a declaration that FirstMerit's security interest in the grinder was discharged by operation of law based upon FirstMerit's failure to respond to the demand for an account within fifteen days. *See* RSA 511:28 (1997). CBI also sought an injunction ordering the sheriff to levy on the grinder free and clear of any interest claimed by FirstMerit or Bank One based

upon the banks' failure to re-perfect their security interests after the grinder was moved to New Hampshire. *See* RSA 528:8 (1997). Thus, we conclude that because CBI is seeking to secure a pre-existing claim in the grinder and to "extinguish or establish the nonexistence of similar interests" of the defendants, the trial court should have evaluated whether it had *quasi in rem* jurisdiction rather than *in rem* jurisdiction in this case. *See Shaffer*, 433 U.S. at 199 n.17.

■ We next address FirstMerit's argument that the trial court lacked *quasi in rem* jurisdiction. In determining whether a court has *quasi in rem* jurisdiction, we consider "(1) whether the exercise of jurisdiction is reasonable in light of New Hampshire's interest in the litigation, and (2) whether the defendant has sufficient minimum contacts with New Hampshire so that, in the circumstances, the exercise of jurisdiction is consistent with the principles of fair play and substantial justice." *Pono v. Brock*, 119 N.H. 814, 816 (1979); *see also Shaffer*, 433 U.S. at 212 (holding that all assertions of state-court jurisdiction must meet the minimum contacts test set forth in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

CBI argues that FirstMerit has sufficient contacts with New Hampshire based upon: (1) FirstMerit's response to the demand for an account of its security interest; and (2) FirstMerit's disbursement of the fire insurance proceeds on EMC's behalf to pay CBI for repair of the grinder. FirstMerit counters that these contacts are insufficient to satisfy due process because it was not foreseeable that they would result in defense of a lawsuit in New Hampshire.

■ "It is 'the relationship among the defendant, the forum, and the litigation' that controls whether a State can assert jurisdiction over a nonresident." *Hall v. Koch*, 119 N.H. 639, 645 (1979) (quoting *Shaffer*, 433 U.S. at 204). We must determine whether a defendant has sufficient minimum contacts with the State "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Internat. Shoe Co. v. Washington*, 326 U.S. at 316 (quotation omitted). Specifically, we examine whether: (1) the defendant's contacts with New Hampshire relate to the cause of action; (2) the defendant has purposefully availed itself of the protections of New Hampshire law; and (3) it would be fair and reasonable to require the defendant to defend the suit in New Hampshire. *McNair v. McNair*, 151 N.H. 343, 349-50 (2004). In the past, we have looked at whether the defendant has ever "set foot" in the State, invoked the benefits and protections of the State or committed an act that has foreseeable consequences to a State resident. *See Pono*, 119 N.H. at 817.

■ The trial court found that it had jurisdiction in this case based upon the fact that the grinder is currently located in New Hampshire and is subject to a valid attachment under State law. The trial court's conclusion was based, in part, upon the fact that the grinder was located in New Hampshire when FirstMerit responded to CBI's demand for an account, and thus "there was a reasonable expectation that the Grinder would be levied and the proceeds from the sale disposed of through the Sheriff's Department and/or the New Hampshire court system." Although we recognize that "the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation," *Shaffer*, 433 U.S. at 207, we agree with FirstMerit that the grinder's current location in New Hampshire is fortuitous. Despite its security interest, FirstMerit does not own the grinder and was not responsible for its removal to New Hampshire for repairs. FirstMerit did not voluntarily seek the State's protection of its interests, *see id.* at 208, but rather responded to CBI's demand for an account in order to avoid extinguishment of its proprietary interest in the grinder.

Furthermore, there is no evidence in the record to show that FirstMerit has had any other contacts with New Hampshire, has ever done business here or has a contract with any New Hampshire entity. On these facts, we cannot conclude that FirstMerit took any voluntary action to purposefully avail itself of the protections of New Hampshire law. *See McNair*, 151 N.H. at 349. Thus, we hold that FirstMerit does not have sufficient contacts with the State such that it would be fair and reasonable to require it to defend this suit here.

*Reversed.*

NADEAU, DALIANIS and GALWAY, JJ., concurred.