NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2019-0307

FORTUNE LAUREL, LLC

v.

HIGH LINER FOODS (USA), INCORPORATED, TRUSTEE & a.

Argued: March 4, 2020
Opinion Issued: May 8, 2020

Hage Hodes, P.A., of Manchester (Jamie N. Hage and Katherine E. Hedges on the brief, and Ms. Hedges orally), for the plaintiff.

Devine, Millimet & Branch, Professional Association, of Manchester (William F. Gramer on the brief), and SLN Law, LLC, of Sharon, Massachusetts (Emily E. Smith-Lee on the brief and orally), for the YOK defendants.

High Liner Foods (USA), Incorporated, trustee defendant, filed no brief.

DONOVAN, J.  Yunnan New Ocean Aquatic Product Science and Technology Group Co., Ltd., Yunnan Ocean King Fisheries Co., Ltd., Yunnan Honghao Fisheries Co., Ltd., and U.S. Ocean Star Trade Co., Ltd. (YOK defendants) appeal an order of the Superior Court (Delker, J.) maintaining an attachment of funds held by High Liner Foods (USA), Inc. (High Liner USA), the trustee defendant.  The YOK defendants argue that the trial court erred by

maintaining <u>quasi</u> <u>in</u> <u>rem</u> jurisdiction over the attached funds despite concluding that it lacked personal jurisdiction over them in the underlying action.  We affirm because the trial court's limited exercise of jurisdiction over the attached funds comports with due process requirements.

## I. Facts

The trial court's orders set forth the following relevant facts.  In 2012, Fortune Laurel, LLC, a Massachusetts company, entered into contracts with the YOK defendants to broker the sale of fish processed by the YOK defendants to companies in the United States and Canada.  One such company was located in Massachusetts, which was subsequently acquired by a Canadian company named High Liner Foods, Inc. (Canada) (High Liner Canada).  Thereafter, High Liner Canada rebranded its corporate acquisition High Liner Foods (USA) and moved it to Portsmouth in 2014.  The arrangement operated as follows.  High Liner USA solicited fish from High Liner Canada, which procured the fish from international sellers, including the YOK defendants.  The YOK defendants shipped the fish to High Liner USA in Massachusetts or Virginia, where High Liner USA inspected the fish and, if satisfactory, distributed it across the United States.  Upon High Liner USA's acceptance of the fish, the YOK defendants invoiced High Liner USA and the invoice was paid by High Liner Canada, which then invoiced High Liner USA.  The YOK defendants shipped fish to High Liner USA "[w]ith some regularity."  Fortune Laurel received a commission from the YOK defendants based upon the amount of fish sold.  Fortune Laurel also purchased fish from the YOK defendants for resale to a Massachusetts company.

After the written contract between Fortune Laurel and the YOK defendants expired, the YOK defendants continued to use Fortune Laurel to broker its sales with High Liner USA until 2017, when "the YOK defendants decided to exclude [Fortune Laurel] from the relationship."  In December 2017, Fortune Laurel sued the YOK defendants in New Hampshire, alleging two counts of breach of contract and violations of the New Hampshire Consumer Protection statute.  Fortune Laurel claimed that the YOK defendants failed to pay its commissions in 2017, improperly caused High Liner Canada to revoke its access to High Liner's online tracking system, sold it fish for resale in Massachusetts that failed to meet applicable standards, and made fraudulent insurance claims that have negatively affected its business.  Fortune Laurel sought damages, attorney's fees, and costs exceeding $600,000.  Contemporaneously with its complaint, Fortune Laurel filed a petition for an <u>ex</u> <u>parte</u> attachment of funds that High Liner USA owes the YOK defendants as payment for fish shipments.  According to the YOK defendants, Fortune Laurel sought to attach a sum exceeding $500,000.  The trial court granted the attachment.

The YOK defendants moved to dismiss the suit for lack of personal jurisdiction. The trial court found that several of Fortune Laurel's claims were "wholly unrelated" to New Hampshire and thus that "dismissal for lack of personal jurisdiction was appropriate." With regards to the claim that the YOK defendants breached their contract with Fortune Laurel by failing to pay commissions on shipments in 2017, the trial court noted that "the YOK defendants' contact with New Hampshire was the prerequisite to the breach at issue," because the breach concerned transactions between the YOK defendants and High Liner USA in New Hampshire. However, it concluded that it would be neither in the interest of judicial economy nor fair to require the YOK defendants to litigate claims in both New Hampshire and Massachusetts when the majority of the conduct at issue occurred in Massachusetts and New Hampshire lacked a strong interest in adjudicating the single claim. Accordingly, the trial court concluded that exercising personal jurisdiction over the YOK defendants "would be inconsistent with notions of fair play and substantial justice." Fortune Laurel thereafter filed a "substantially similar" lawsuit against the YOK defendants in Massachusetts.[1]

Nonetheless, the trial court ruled that it could continue to exercise quasi in rem jurisdiction over the attached funds. It noted the difference in magnitude between exercising jurisdiction over the merits of the case and exercising jurisdiction over the attached funds. It also found credible Fortune Laurel's argument that the YOK defendants' "location in China severely limits [Fortune Laurel's] ability to obtain a remedy in this case" in the event Fortune Laurel prevails in the Commonwealth. The trial court concluded that due process allowed it to "temporarily freeze" the YOK defendants' assets by maintaining the attachment "while the merits of the underlying lawsuit are adjudicated" in Massachusetts. High Liner USA moved for reconsideration, the trial court denied its motion and the YOK defendants filed this appeal.

## II. Standard of Review

The plaintiff bears the burden of demonstrating facts sufficient to establish jurisdiction. Continental Biomass Indus. v. Env't Mach. Co., 152 N.H. 325, 327 (2005). The plaintiff need make only a prima facie showing of jurisdictional facts to defeat a defendant's motion to dismiss. See State v. N. Atlantic Ref. Ltd., 160 N.H. 275, 280 (2010). Under the prima facie standard, the plaintiff must proffer evidence which, if credited, is sufficient to support findings of all facts essential to jurisdiction. See id. Because the trial court held an evidentiary hearing on the YOK defendants' motion to dismiss and Fortune Laurel's attachment petition, we will defer to the trial court's factual findings drawn from the testimony at the hearing, unless they are unsupported by the record or clearly erroneous. See Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 678 (1st Cir. 1992); see also N. Atlantic Ref., 160 N.H. at 280. However,

---

[1] No party has appealed the trial court's order dismissing Fortune Laurel's substantive action.

because the exercise of jurisdiction implicates the Fourteenth Amendment to the United States Constitution, we review de novo the trial court's legal conclusion as to whether its findings support the exercise of jurisdiction. See Boit, 967 F.2d at 678; see also State v. Dupont, 155 N.H. 644, 645 (2007).

### III. Analysis

As an initial matter, Fortune Laurel asserts that the trial court's order is not a final decision on the merits, and, therefore, our review of the trial court's decision is inappropriate. See Sup. Ct. R. 3, 7. We conclude that, in order to reach the YOK defendants' due process claim, we will treat their appeal as a properly filed interlocutory appeal and waive the procedural requirements of Supreme Court Rule 8. See Sup. Ct. R. 1; In re Brittany S., 147 N.H. 489, 490 (2002); see also Mosier v. Kinley, 142 N.H. 415, 424 (1997) ("[I]t would be unfair to force a defendant to expend the time and resources necessary to mount a defense on the merits if the court has no personal jurisdiction over the defendant.").

Turning to the merits, the YOK defendants argue that the trial court's exercise of jurisdiction contravenes due process standards established by the United States Supreme Court. They contend that the trial court's conclusion that it has jurisdiction over the attached funds is irreconcilable with its conclusion that it does not have personal jurisdiction in the underlying action. We disagree.

"A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." Goodyear Dunlop Tires Operations, S. A. v. Brown, 564 U.S. 915, 918 (2011). A court may exercise personal jurisdiction over a defendant, consistent with due process, if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Internat. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation omitted); see Continental Biomass, 152 N.H. at 329. In Shaffer v. Heitner, 433 U.S. 186, 208-09, 212 (1977), the Court expanded the application of the International Shoe test, holding that "all assertions of state-court jurisdiction," including the exercise of quasi in rem jurisdiction, "must be evaluated according to the standards set forth in International Shoe and its progeny."

One type of quasi in rem jurisdiction exists where "the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him." Continental Biomass, 152 N.H. at 328 (quotation omitted). In such a case, "the court's jurisdiction over the defendant's property is invoked through attachment . . . or a similar procedure." Id.; see Office Depot Inc. v. Zuccarini, 596 F.3d 696, 699 (9th Cir. 2010) (explaining that this

type of quasi in rem jurisdiction "is used to establish the ownership of property in a dispute unrelated to the property" and is sometimes called "attachment jurisdiction" (quotation omitted)). We observe that, although quasi in rem jurisdiction is typically asserted as a justification for a court to entertain the merits of claims against a defendant, here it is asserted for the narrow purpose of attaching the defendants' funds while the merits are litigated elsewhere. Cf. Continental Biomass, 152 N.H. at 328-29. Thus, the property of the YOK defendants is subjected to New Hampshire's jurisdiction, not to require the YOK defendants to litigate the merits of Fortune Laurel's claims, but for the limited purpose of addressing issues that may arise from the attachment of their funds here.

The Shaffer Court contemplated a situation similar to the one now before us. It observed that, to prevent a defendant from avoiding "payment of his obligations by the expedient of removing his assets to a place where he is not subject to" personal jurisdiction, "a State in which property is located should have jurisdiction to attach that property . . . as security for a judgment being sought in a forum where the litigation can be maintained consistently with International Shoe." Shaffer, 433 U.S. at 210 (quotation omitted). This observation "evidence[s] an acknowledgment that there is a distinction between jurisdiction to adjudicate the underlying merits of the controversy" and jurisdiction to attach property while the underlying merits are litigated elsewhere. Carolina Power & Light Co. v. Uranex, 451 F. Supp. 1044, 1048 (N.D. Cal. 1977); see 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1072, at 311 (2002) (noting that there is a "qualitative difference between attachment jurisdiction and in personam jurisdiction" such that "[a]rguably fair play and substantial justice requires fewer contacts between the defendant and the forum to enforce a judgment that is limited by the value of the attached property than it requires to enforce a full in personam judgment against him"). Accordingly, courts in other jurisdictions have held that a court without personal jurisdiction over a defendant may nonetheless attach the defendant's property pending the resolution of the underlying claim in another jurisdiction. See, e.g., Uranex, 451 F. Supp. at 1047-48; Barclays Bank, S.A. v. Tsakos, 543 A.2d 802, 805-06 (D.C. App. 1988).

In Uranex, 451 F. Supp. at 1045-46, for example, the United States District Court for the Northern District of California concluded that it lacked personal jurisdiction over a French company. However, it also concluded that it could attach the company's assets located in California while the plaintiffs filed suit elsewhere. Id. at 1048-49. The court reasoned that when

> the facts show that the presence of [the] defendant's property within the state is not merely fortuitous, and that the attaching jurisdiction is not an inconvenient arena for [the] defendant to litigate the limited issues arising from the attachment, assumption

5

of limited jurisdiction to issue the attachment pending litigation in another forum would be constitutionally permissible.

Id. at 1048.  Although the attached assets in Uranex were unrelated to the underlying dispute, the federal district court found that the assets were the only assets the defendant possessed in the United States, it was unlikely that the defendant would bring such assets into the United States in the future, and the assets were a product of the company's business relationship with another company headquartered in California.  Id. at 1048-49.  Thus, the court found that California was "not an exceptional or inconvenient forum for" the defendant to litigate issues pertaining to the attached funds.  Id. at 1049.

Similarly, in Tsakos, 543 A.2d at 803, 805-06, the District of Columbia Court of Appeals cast doubt on whether a court in the District could assert personal jurisdiction over the defendants, a family of Greek citizens who lived in France at the time, based solely upon their contacts with the District that existed prior to the events giving rise to the plaintiff's claims.  However, the court held that the trial court could attach an apartment owned by the defendants and located in the District while the merits of the claims were adjudicated in Europe.  Id.  The court noted the plaintiff's allegation that the defendants would attempt to remove the property from the District by sale, and found that the defendants' previous residence, the husband's previous maintenance of an office, and their ownership of an apartment in the District provided sufficient contacts to impose upon the defendants "any steps necessary to deal with issues arising from the attachment."  Id. at 805-06 (footnote omitted).

We agree with the rationale supporting the attachment of property in the foregoing cases.  In appropriate circumstances, a court may exercise jurisdiction over a defendant's assets by means of attachment despite the court's lack of personal jurisdiction over the defendant.  "[T]he relationship among the defendant, the forum, and the litigation" is "the central concern of the inquiry into" whether a state can assert jurisdiction.  Shaffer, 433 U.S. at 204; see Continental Biomass, 152 N.H. at 329.  The analysis of that relationship, and thus the due process limits on a court's exercise of jurisdiction, may be different when the litigation concerns attached funds that secure a potential judgment resulting from litigation pending in another jurisdiction as opposed to the substantive merits of the underlying claims.  See Shaffer, 433 U.S. at 210; Uranex, 451 F. Supp. at 1048; see also Cameco Industries, Inc. v. Mayatrac, S.A., 789 F. Supp. 200, 201, 203 (D. Md. 1992) (observing that the application of the International Shoe standard to a defendant's contacts with a forum can confer on a court jurisdiction to attach but not personal jurisdiction).  Pursuant to Shaffer's holding that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny," Shaffer, 433 U.S. at 212, the trial court properly exercised jurisdiction over the attached funds if

6

"the maintenance of the suit does not offend traditional notions of fair play and substantial justice," Internat. Shoe, 326 U.S. at 316 (quotation omitted).  See Cameco, 789 F. Supp. at 203.

We have previously set forth a three-pronged analysis to determine whether a court in New Hampshire may exercise quasi in rem jurisdiction consistent with the International Shoe standard.  See Continental Biomass, 152 N.H. at 329.  We consider whether: (1) the defendants' contacts with New Hampshire relate to the cause of action; (2) the defendants have purposefully availed themselves of the protections of New Hampshire law; and (3) it would be fair and reasonable to require the defendants to defend the suit in New Hampshire.[2]  Id.  Applying this analysis, we conclude that the trial court's exercise of jurisdiction over the attached funds is consistent with due process.

As to the first prong, the YOK defendants have some, although limited, contact with New Hampshire, which relates to the cause of action, i.e., the attachment of their funds.  The YOK defendants maintain a business relationship — initially brokered by Fortune Laurel in 2012 — with High Liner USA, which became a New Hampshire company in 2014.  The attached funds are a product of this relationship.  We therefore agree with the trial court that the presence of the funds in New Hampshire is not merely fortuitous, but rather "the funds are located here because of the YOK defendants' choice to do business with a company headquartered in" New Hampshire.  See Uranex, 451 F. Supp. at 1048-49 (weighing that "the presence of the debt [derives] necessarily from the dealings between" the defendant and a California company in favor of exercising jurisdiction in California).

Similarly, with regard to the second prong, we agree with the trial court's conclusion that the YOK defendants have "continuously and purposefully availed themselves of New Hampshire law, as the funds attached are derivative of a relationship with a company operating under the laws of the State of New Hampshire."  See Fellows v. Colburn, 162 N.H. 685, 694 (2011) (explaining that purposeful availment requires that the defendants' contacts with New Hampshire result from their deliberate actions and that the nature of the contacts are such that it is foreseeable to be called into court in the state to account for those contacts).

Pursuant to the third prong, we consider: (1) the burden on the defendants; (2) New Hampshire's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.  N. Atlantic Ref., 160 N.H. at 285-86.

---

[2] Although in Continental Biomass, 152 N.H. at 329, we also described a distinct, two-pronged jurisdictional analysis, we applied the three-pronged analysis outlined above.  Accordingly, we will apply the three-pronged analysis here.

7

We have recognized that these factors "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Id. at 286.

In a context similar to the one now before us, the Uranex Court reasoned that "the application of notions of 'fair play and substantial justice' include consideration of both the jeopardy to [the] plaintiff's ultimate recovery and the limited nature of the jurisdiction sought." Uranex, 451 F. Supp. at 1048; see Internat. Shoe, 326 U.S. at 317 (noting that due process "demands may be met by such contacts of the corporation with the state of the forum as make it reasonable . . . to require the corporation to defend the particular suit which is brought there") (emphasis added)). Subjecting the YOK defendants to litigation in New Hampshire regarding "the limited issues arising from the attachment," Uranex, 451 F. Supp. at 1048, does not impose a significant burden on them.

We also recognize the difficulty of enforcing a United States judgment in China, where the YOK defendants are located. See generally Aaron D. Simowitz, Convergence and the Circulation of Money Judgments, 92 S. Cal. L. Rev. 1031 (2019) (discussing the historical impediments, and recent limited improvements, to enforcing United States judgments in China). Although Fortune Laurel makes no allegation that the YOK defendants are seeking to shield their assets from satisfying a potential judgment, the YOK defendants do not claim to have alternative, permanent assets in the United States that Fortune Laurel could use to satisfy such a judgment. Furthermore, New Hampshire's interests together with the general principles of comity among the states support allowing Fortune Laurel to satisfy a judgment should it prevail in Massachusetts. We therefore conclude that it is fair and reasonable for the trial court to exercise jurisdiction over the attached funds.

Our decision in Travelers Indemnity Co. v. Abreem Corp., 122 N.H. 583 (1982), is unavailing to the YOK defendants. There, the plaintiff brought a breach of contract action in Massachusetts, and the Massachusetts court issued an attachment against the defendants' property in Massachusetts, but the plaintiff found that the initial attachment provided insufficient security for its potential judgment. Id. at 584. The plaintiff then sought and obtained an attachment of the defendants' real estate in New Hampshire from a New Hampshire court, upon invoking its quasi in rem jurisdiction. Id. The trial court found that personal jurisdiction was lacking, but assumed quasi in rem jurisdiction over "the lawsuit and the litigants." Id. at 585. We reversed, in part, because "New Hampshire is not related to the parties or the litigation" and because the defendants' attached property was unrelated to the cause of action. Id. at 585-86. Here, on the other hand, the YOK defendants are connected to New Hampshire through their business relationship with High Liner USA, a New Hampshire company. The YOK defendants established that relationship through Fortune Laurel and at least one of Fortune Laurel's underlying claims is based primarily on that relationship.

8

The YOK defendants argue that, under similar circumstances, courts only permit the limited exercise of jurisdiction over attached funds when there are extenuating circumstances, such as the "real risk that the defendant will attempt to hide or remove assets" or that the plaintiff will be unable to recover damages "without some immediate action." By way of example they point to Tsakos, 543 A.2d at 805, in which the court noted that "[a]n allegation is made of intended effective removal of the property by way of sale and nonavailability of assets elsewhere." The court in Tsakos, however, focused its analysis on the defendants' and their property's contacts with the forum, rather than on the defendants' alleged intent to remove their property. Id. at 805-06. Furthermore, as the YOK defendants acknowledged at oral argument, their "assets are located overseas." See Uranex, 451 F. Supp. at 1048 (weighing that the defendant "has no other assets within the United States" in favor of exercising jurisdiction over attached funds). The YOK defendants note that the trial court found that they have an ongoing business relationship with High Liner USA which, they contend, will "likely . . . result in the presence of attachable assets" (emphasis added) in the United States. However, the trial court's findings regarding their current ongoing business relationship do not support the suggestion that the relationship will, in fact, continue until the time a judgment is rendered in Massachusetts. Therefore, the presence in the United States of alternative assets belonging to the YOK defendants is speculative. The existence of extenuating circumstances, such as a party's intent to hide or remove assets, may increase the urgency of attaching funds. However, we conclude that such circumstances are not a necessary predicate to exercising jurisdiction consistent with due process in this case given the YOK defendants' contacts with New Hampshire and their lack of permanent assets in the United States to secure a potential judgment.[3]

## IV. Conclusion

For the reasons stated above, we conclude that the trial court's exercise of jurisdiction over the YOK defendants' funds conforms with due process and therefore affirm the trial court's order maintaining the attachment of those funds.

Affirmed.


HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

---

[3] The YOK defendants also argue, for the first time on appeal by way of a footnote in their brief, that "the attachment automatically dissolved upon dismissal of the plaintiff's claims by operation of" RSA 511:45 (2010), which states, in part, that "when the action is . . . dismissed, the attachment made in the action is dissolved thereby." We will not address this argument because the YOK defendants did not raise it before the trial court and it is insufficiently briefed for our review. See Halifax-American Energy Co. v. Provider Power, LLC, 170 N.H. 569, 574 (2018).